[No. G045332. Fourth Dist., Div. Three. June 18, 2012.]

MISTY LYNN LaCHANCE, Plaintiff and Respondent, v.
GEORGE VALVERDE, as Director, etc., Defendant and Appellant.

**COUNSEL**

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Celine M. Cooper and Jennie M. Kelly, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Chad R. Maddox and Chad R. Maddox for Plaintiff and Respondent.

**OPINION**

**FYBEL, J.—**

### INTRODUCTION

Misty Lynn LaChance pled guilty to driving under the influence of alcohol (DUI), and the Department of Motor Vehicles (the DMV) suspended her driver's license for six months, pursuant to Vehicle Code section 13352, subdivision (a)(1). (All further statutory references are to the Vehicle Code,

unless otherwise specified.) This suspension was imposed concurrently with a one-year administrative per se (APS) suspension imposed by the DMV in connection with the same DUI incident.

 LaChance requested that the DMV issue her a restricted driver's license during the term of her suspension, pursuant to section 13352, subdivision (a)(3). The DMV denied the request because subdivision (a)(3) of section 13352 only applies to drivers who have been convicted of DUI on more than one occasion; although LaChance had been arrested for DUI once previously, she had never before been convicted of DUI.

The trial court granted LaChance's petition for a peremptory writ of mandamus, ordering the DMV to issue LaChance a restricted driver's license pursuant to section 13352, subdivision (a)(3). We reverse the judgment, because the unambiguous language of section 13352, subdivision (a)(3) does not give LaChance the right to obtain a restricted driver's license under that statute.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

LaChance was arrested for DUI on December 6, 2007. After an administrative hearing, the DMV suspended LaChance's driver's license, effective February 1, 2008. Her license was reinstated on August 1, 2008. LaChance was not convicted in criminal court as a result of that arrest.

On July 30, 2010, LaChance was again arrested for DUI. (§ 23152, subds. (a), (b).) The DMV imposed a one-year APS suspension of LaChance's driver's license. The APS suspension was effective November 17, 2010. On November 10, 2010, LaChance pled guilty to DUI (§ 23152, subd. (b)); was placed on three years' informal probation; and was ordered to serve two days in jail, complete a 90-day first offender alcohol treatment program, perform community service, and pay a number of court-imposed fees. Because of her criminal conviction, the DMV imposed a six-month suspension of LaChance's driver's license (§ 13352, subd. (a)(1)) to run concurrently with the APS suspension.

On March 1, 2011, LaChance installed an ignition interlock device (IID) on her vehicle. A day later, she obtained proof of financial responsibility, and enrolled in an 18-month second offender alcohol treatment program, rather than the three-month first offender program ordered by the criminal court. LaChance then applied for an IID restricted driver's license, pursuant to section 13352, subdivision (a)(3); the DMV denied her request.

LaChance filed a petition for a peremptory writ of mandamus with the Orange County Superior Court. After briefing and a hearing, the trial court granted the petition, compelling the DMV to issue an IID restricted driver's license to LaChance. Judgment was entered, and George Valverde, as Director of the DMV, timely appealed.

DISCUSSION

I.

*MOOTNESS*

LaChance argues the appeal is moot because the period of her driver's license suspension has expired. "A case is moot when the reviewing court cannot provide the parties with practical, effectual relief. [Citation.] In such cases, the appeal generally should be dismissed. [Citation.] But even if a case is technically moot, the court has inherent power to decide it where the issues presented are important and of continuing interest. [Citation.]" (*City of San Jose v. International Assn. of Firefighters, Local 230* (2009) 178 Cal.App.4th 408, 417–418 [100 Cal.Rptr.3d 396].)

The Attorney General filed a request for judicial notice, attaching two e-mails she contends establish LaChance's driver's license suspension has been stayed for part of the appeal period, meaning the issues on appeal are still alive. We reject the Attorney General's contention that e-mails exchanged between a deputy attorney general and counsel for a party to an appeal are "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States," of which judicial notice may be taken. (Evid. Code, § 452, subd. (c).) We therefore deny the Attorney General's initial request to take judicial notice.

The Attorney General also filed a supplemental request for judicial notice, attaching a certified copy of LaChance's official driver's record. This document does appear to be covered by Evidence Code section 452, subdivision (c). At oral argument, LaChance's counsel stated that he did not object to the Attorney General's supplemental request. We grant the supplemental request for judicial notice.

We need not determine whether the appeal is actually moot. Assuming for purposes of this discussion that it is, we conclude the issues the case presents are important and of continuing interest. Additionally, because the length of driver's license suspensions imposed by statute is relatively short, there is a risk that the issue presented by the appeal will evade review. We therefore proceed to the merits of the appeal.

## II.

### STANDARD OF REVIEW AND RULES OF STATUTORY CONSTRUCTION

This case involves the interpretation of a statute, and our review is therefore de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) The DMV's "interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts; however, unlike quasi-legislative regulations adopted by an agency to which the Legislature has confided the power to 'make law,' and which, if authorized by the enabling legislation, bind this and other courts as firmly as statutes themselves, the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

In *Martinez v. Combs* (2010) 49 Cal.4th 35, 51 [109 Cal.Rptr.3d 514, 231 P.3d 259], the California Supreme Court stated: " '[O]ur fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] In this search for what the Legislature meant, '[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' "

## III.

### MERITS

As a result of her DUI arrest in July 2010, LaChance suffered two separate suspensions of her driving privileges, one APS and one resulting from her criminal conviction. "[T]he Legislature, in enacting these statutes, contemplated two processes—one involving court proceedings and criminal in nature, the other involving administrative proceedings and civil in nature; and that these processes are, for the most part, intended to operate independently

of each other and to provide for different dispositions. At times, these dispositions will lead to dual periods of license suspension, revocation or restriction. Sometimes these dual periods will run concurrently with each other; at other times one period will run consecutively to the other." (*Robertson v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 938, 947 [9 Cal.Rptr.2d 319].)

The APS suspension of LaChance's driving privileges is provided for in section 13353.2, subdivision (a)(1): "The department shall immediately suspend the privilege of a person to operate a motor vehicle for any one of the following reasons: [¶] . . . The person was driving a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood."

The length of the APS suspension is set forth in section 13353.3, subdivision (b): "The period of suspension of a person's privilege to operate a motor vehicle under Section 13353.2 is as follows: [¶] (1) If the person has not been convicted of a separate violation of Section . . . 23152 . . . , which offense or occurrence occurred within 10 years of the occasion in question, the person's privilege to operate a motor vehicle shall be suspended for four months. [¶] (2) (A) If the person has been convicted of one or more separate violations of Section . . . 23152 . . . , which offense or occasion occurred within 10 years of the occasion in question, the person's privilege to operate a motor vehicle shall be suspended for one year, except as provided in subparagraphs (B) and (C). [¶] (B) The one-year suspension pursuant to subparagraph (A) shall terminate if the person has been convicted of a violation arising out of the same occurrence and all of the following conditions are met: [¶] (i) The person is eligible for a restricted driver's license pursuant to Section 13352. [¶] (ii) The person installs an ignition interlock device as required in Section 13352 for that restricted driver's license. [¶] (iii) The person complies with all other applicable conditions of Section 13352 for a restricted driver's license."

Section 13352, subdivision (a) provides for the suspension of driving privileges by the DMV, following a conviction for DUI, and sets forth the length of the suspension. As is relevant to the present case, the statute provides: "The department shall immediately suspend or revoke the privilege of a person to operate a motor vehicle upon the receipt of an abstract of the record of a court showing that the person has been convicted of a violation of Section 23152 . . . . For the purposes of this section, suspension or revocation shall be as follows: [¶] (1) Except as required under Section 13352.1 or 13352.4, upon a conviction or finding of a violation of Section 23152

punishable under Section 23536, the privilege shall be suspended for a period of six months. The privilege shall not be reinstated until the person gives proof of financial responsibility and gives proof satisfactory to the department of successful completion of a driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code described in subdivision (b) of Section 23538. If the court, as authorized under paragraph (3) of subdivision (b) of Section 23646, elects to order a person to enroll in, participate in, and complete either program described in subdivision (b) of Section 23542, the department shall require that program in lieu of the program described in subdivision (b) of Section 23538. . . . [¶] . . . [¶] (3) Except as provided in Section 13352.5, upon a conviction or finding of a violation of Section 23152 punishable under Section 23540, the privilege shall be suspended for two years. The privilege shall not be reinstated until the person gives proof of financial responsibility and gives proof satisfactory to the department of successful completion of a driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code as described in subdivision (b) of Section 23542. . . . The department shall advise the person that he or she may apply to the department for a restriction of the driving privilege, which may include credit for a suspension period served under subdivision (c) of Section 13353.3, subject to the following conditions: [¶] (A) Completion of 12 months of the suspension period, or completion of 90 days of the suspension period if the underlying conviction did not include the use of drugs as defined in Section 312 and the person was found to be only under the influence of an alcoholic beverage at the time of the violation. [¶] (B) The person satisfactorily provides, subsequent to the violation date of the current underlying conviction, either of the following: [¶] (i) Proof of enrollment in an 18-month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code. [¶] (ii) Proof of enrollment in a 30-month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, if available in the county of the person's residence or employment. [¶] (C) The person agrees, as a condition of the restriction, to continue satisfactory participation in the program described in subparagraph (B). [¶] (D) The person submits the 'Verification of Installation' form described in paragraph (2) of subdivision (g) of Section 13386. [¶] (E) The person agrees to maintain the ignition interlock device as required under subdivision (g) of Section 23575. [¶] (F) The person provides proof of financial responsibility, as defined in Section 16430. [¶] (G) The person pays all reissue fees and any restriction fee required by the department. [¶] (H) The person pays to the department a fee sufficient to cover the costs of administration of this paragraph, as determined by the department. [¶] (I) The restriction shall remain in effect for the period required in subdivision (f) of Section 23575." (§ 13352, subd. (a)(1), (3).)

■ Thus, if the privilege to drive has been suspended for two years pursuant to section 13352, subdivision (a)(3), the driver may obtain a restricted driver's license if the driver meets the requirements of section 13352, subdivision (a)(3)(A) through (H). LaChance argues she met the requirements of section 13352, subdivision (a)(3)(A) through (H), mandating that the DMV issue her a restricted driver's license. The DMV counters it properly denied LaChance a restricted driver's license because she was never eligible for one. We conclude the DMV's argument is the correct one.

Based on its language, section 13352, subdivision (a)(3) does not apply to LaChance. The statute provides that "upon a conviction or finding of a violation of Section 23152 punishable under Section 23540, the privilege [of a person to operate a motor vehicle] shall be suspended for two years." (§ 13352, subd. (a)(3).) While LaChance was convicted of violating section 23152, her crime was not punishable under section 23540, which provides: "*If a person is convicted of a violation of Section 23152 and the offense occurred within 10 years of a separate violation of Section 23103, as specified in Section 23103.5, 23152, or 23153, that resulted in a conviction,* that person shall be punished by imprisonment in the county jail for not less than 90 days nor more than one year and by a fine of not less than three hundred ninety dollars ($390) nor more than one thousand dollars ($1,000). The person's privilege to operate a motor vehicle shall be suspended by the department pursuant to paragraph (3) of subdivision (a) of Section 13352. The court shall require the person to surrender the driver's license to the court in accordance with Section 13550." (§ 23540, subd. (a), italics added.)

■ LaChance's earlier offense did not result in a conviction, making section 13352, subdivision (a)(3) inapplicable. Because this statute did not apply to LaChance, her driver's license was not suspended for two years and she was not punished with imprisonment in a county jail for a minimum of 90 days. Rather, as specified in the probation order and the order of suspension, LaChance served two days in jail, and her driving privilege was suspended for six months, pursuant to sections 13352, subdivision (a)(1) and 23536.

Because the language of section 13352 is unambiguous, we need not consider the legislative history on which LaChance relies. Even if we were to consider it, however, we would conclude it supports our interpretation of the relevant statutes.

The legislative history offered by LaChance addresses Senate Bill No. 895 (2009–2010 Reg. Sess.) (Senate Bill No. 895), which made amendments to various Vehicle Code sections and which was chaptered and became effective on June 22, 2010. Senate Bill No. 895 was a clarifying measure: "According to the author, 'Senate Bill 895 simply corrects a drafting error in last year[']s

SB 598, which I authored. SB 598 shortened the suspension period for a repeat DUI offender to get a restricted license if they install an IID on their vehicle. Because of the confusing nature of the cross over between the administrative license suspension and the court license suspension, there were drafting errors in the bill that still required the person to serve their entire 12-month DMV suspension even if that suspension went beyond the post conviction suspension time in SB 598. [¶] This bill corrects that error by saying the administrative suspension will end when the requirements of SB 598 are met. The reality is many DUI offenders that fall under this bill and its predecessor will still end up serving close to, if not the full DMV administrative suspension because they are repeat offenders. SB 895 is a clean-up measure needed in order to clarify the goal of SB 598 (Huff) from 2009 regarding restricted driver's license changes. [¶] The intent of SB 598 was to apply the restricted driver's license changes to both the administrative and criminal suspension of a DUI conviction. The way the measure was drafted, however, the changes are only applied to the criminal suspension side of the process. A DUI offender who has had his driving privilege suspended by the DMV would still be required to serve out the one-year suspension. [¶] Existing law, that will become operative on July 1, 2010, authorizes a person who has been convicted of a DUI offense and who has had his or her driving privilege suspended or revoked to apply to the DMV for a restricted driver's license, if certain conditions, including that the person has installed an ignition interlock device, are met. Existing administrative law requires the DMV to immediately suspend the driving privilege of a person under certain circumstances. [¶] SB 895 will require the one-year administrative suspension to terminate if the person has been convicted of a violation arising out of the same occurrence and the person meets specific conditions. Due to the fact that SB 598 from 2009 becomes operative July 1, 2010, SB 895 declares that it is to take effect immediately as an urgency statute.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 895, as amended Apr. 6, 2010, pp. 2–3.)

Accordingly, this legislation was intended to make the effect of the installation of an IID the same on an APS license suspension as on a postconviction license suspension. However, Senate Bill No. 895 it did not change the circumstances under which a restricted driver's license could be obtained, based on installation of an IID, in the first place.

The legislative history of Senate Bill No. 895 also explains that a restricted driver's license based on the installation of an IID is not available after a first conviction for DUI. (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 895, as amended Apr. 6, 2010, pp. 3–4 [Sen. Bill No. 598

(2009–2010 Reg. Sess.) "authorizes an offender *convicted of a second or subsequent DUI* who shows proof that he or she installed an IID to receive a reinstated license" (italics added)]; *id.* at p. 7 [Sen. Bill No. 598 (2009–2010 Reg. Sess.) "provided that the DMV shall advise *a person convicted of a second or third offense of DUI*" regarding the installation of an IID to obtain a restricted driver's license (italics added)].) Nothing in the legislative history in our record explains why first offenders are treated differently than second or third offenders in section 13352, vis-à-vis the ability to obtain a restricted driver's license through the IID installation process.

LaChance argues amendments to section 13353.3, which followed entry of judgment in her favor in the trial court, support her on appeal, because they are "further evidence of the Legislature's intent that the July 1, 2010 amendment [to section 13353.3] apply as broadly as possible." (Some capitalization omitted.) In January 2012, section 13353.3 was amended to add a new subdivision (b)(2)(C), which contains a separate means for obtaining a restricted driver's license through the installation of an IID, if the driver pleaded guilty or nolo contendere to a violation of section 23103 (reckless driving) in satisfaction of an original charge of violating section 23152 (driving under the influence), and the prosecution makes a factual statement on the record explaining why the reduced charge is being agreed to in satisfaction. (Stats. 2011, ch. 657, § 2.) This portion of the statute is not applicable here. We disagree with LaChance's contention that this, or any other amendment to this series of statutes, evidences a legislative intent to broaden the ability of those convicted of DUI to obtain restricted drivers' licenses without limit.

A literal reading of the statutes does not render an absurd result, as LaChance argues. The trial court focused on what it referred to (and we paraphrase) as the anomaly that a two-time offender would be eligible for a restricted driver's license with IID installation, while a first-time offender would not be. Another statute, section 13352.4, provides for the issuance of a restricted driver's license to someone whose license was suspended under section 13352. LaChance could have applied for a restricted driver's license under this section, but chose to apply under section 13352, subdivision (a)(3). The trial court's judgment commands the DMV to "issue [LaChance] a restricted license pursuant to Vehicle Code section 13352(a)(3)"—not pursuant to any other statute. LaChance argues for the first time in her respondent's brief on appeal, that she was eligible for a restricted driver's license under section 13352.4, as it is made part of section 13352. (The Attorney General also disputes that LaChance is eligible for a restricted driver's license under that statute.) LaChance failed to raise this issue in the trial court, so it is forfeited. (*Tutti Mangia Italian Grill, Inc. v. American Textile Maintenance Co.* (2011) 197 Cal.App.4th 733, 740 [128 Cal.Rptr.3d 551].)

## DISPOSITION

The judgment is reversed. Appellant to recover costs on appeal.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.