Filed 7/3/14  Reynolds v. City of Calistoga CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>

**GRANT REYNOLDS,**

    **Plaintiff and Appellant,**

v.

**CITY OF CALISTOGA,**

    **Defendant and Respondent.**

</td><td>

**A134190**
**A135501**

**(Napa County**
**Super. Ct. No. 26-46826)**

</td></tr>
</table>

Appellant Grant Reynolds sued respondent City of Calistoga (City), alleging several counts related to water appropriated by the City for its municipal use.  He contends on appeal the trial court erred in finding one of his claims moot.  We affirm this finding.  He also appeals the trial court's denial of his motion for attorney fees pursuant to Code of Civil Procedure section 1021.5.  We reverse the trial court's finding that Reynolds is not entitled to fees, and remand for a determination of reasonable fees.

BACKGROUND

In March 2009, Reynolds filed the instant lawsuit.  The operative second amended complaint (complaint) alleges six causes of action, five of which seek damages under a decades-old private water rights agreement between the City and Reynolds's predecessor in interest (the private damages claims).  The disputed water rights involved waters above Kimball Dam (the dam), which is owned and operated by the City.  The dam blocks the flow of Kimball Creek and forms the Kimball Reservoir (the reservoir), a source of municipal water for the City pursuant to licenses granted by the State Water Resources Control Board (Water Board).

1

The remaining cause of action in the complaint alleges the City failed to ensure sufficient water flowed below the dam to sustain a historic steelhead trout population, in violation of Fish and Game Code section 5937 (section 5937) and the public trust doctrine (the public trust claim). The complaint sought an injunction compelling the City "to maintain an adequate flow of water sufficient to restore and sustain the fishery that has been destroyed and will continue to be irreparably harmed if a minimum natural flow of water is not derived from the springs hidden by the waters of its reservoir together with runoff necessary for the survival of the steelhead trout."

In December 2009, the City moved for judgment on the pleadings on the public trust claim. The City argued (1) the proper defendant for Reynolds's claim was the Water Board, which authorized the City's water appropriation, and (2) the Water Board determined the City's water appropriation conformed with the public trust when it issued licenses to the City in 2007. The trial court granted the motion, and Reynolds moved for reconsideration. The Water Board and the Department of Fish and Game (DFG)[1] jointly filed two amicus briefs in support of Reynolds's motion.[2] The briefs argued that the City, as a water diverter and public agency, was legally obliged to adequately protect the public trust in its operation of the dam. The briefs also stated the Water Board had never determined whether the City's diversion of water and operation of the dam complied with

---

[1]     Effective January 1, 2013, DFG was renamed the Department of Fish and Wildlife. (Fish & G. Code, § 37; Stats. 2012, ch. 559, § 5.)

[2]     One of the joint amicus briefs apparently was filed in a short-lived writ proceeding brought by Reynolds on the same grounds as the public trust claim, but was not filed in this litigation. The Water Board and DFG plainly intended both briefs be filed in connection with Reynolds's motion for reconsideration in this litigation, and the parties and trial court understood them as such. Accordingly, we grant Reynolds's November 8, 2012 request for judicial notice with respect to this amicus brief (tab 16), which the City does not oppose. We deny his concurrent request for judicial notice of: (1) other filings in the writ proceeding (tabs 1-15, 17-21), as they are not relevant to this appeal, and (2) a Napa County Grand Jury report (tab 22) and records filed in a separate appeal, as these records were not before the trial court and are not relevant to this appeal. We address additional requests for judicial notice below.

2

the public trust.  In May 2010, the trial court, on reconsideration, denied the City's motion for judgment on the pleadings with respect to the public trust claim.

Shortly thereafter, the parties stipulated to stay the litigation and explore settlement.  Settlement negotiations eventually collapsed and litigation recommenced in the fall of 2010.  In January 2011, the trial court granted the City's motion for judgment on the pleadings with respect to the private damages claims, and dismissed these claims without leave to amend.[3]  Litigation on the public trust claim continued.

On August 23, 2011, the City passed a resolution adopting an interim bypass plan for the reservoir (bypass plan).[4]  The bypass plan acknowledged the City's obligations pursuant to section 5937 and the public trust, and committed to a specific schedule substantially increasing the amount of water to bypass the reservoir and flow below the dam.  Prior to the City's adoption of the bypass plan, the Water Board and DFG submitted written comments expressing concern that the bypass plan was not adequate for purposes of section 5937 and the public trust.

On August 24, 2011, the City filed a motion to dismiss Reynolds's public trust claim as moot, arguing the bypass plan satisfied the City's duty under section 5937 and the public trust.  In September, the trial court dismissed Reynolds's public trust claim as moot.  Judgment against Reynolds issued.

Reynolds subsequently moved for attorney fees for time spent on the public trust claim, pursuant to Code of Civil Procedure section 1021.5.  The trial court denied the motion.

DISCUSSION

I. *The Public Trust Doctrine*

The public trust doctrine provides that certain natural resources are held by the state " ' "as trustee of a public trust for the benefit of the people." ' [Citation.]"

---

[3]  In his reply brief, Reynolds abandons his appeal of this ruling.

[4]  The bypass plan included a commitment to study the water flow below the reservoir and the needs of the steelhead trout, and contemplated adjusting the bypass plan upon completion of this study.

3

(*National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419, 434, fn. omitted.) Accordingly, "[t]he state has an affirmative duty to take the public trust into account in the planning and allocation of water resources, and to protect public trust uses whenever feasible. . . . As a matter of practical necessity the state may have to approve appropriations despite foreseeable harm to public trust uses. In so doing, however, the state must bear in mind its duty as trustee to consider the effect of the taking on the public trust [citation], and to preserve, so far as consistent with the public interest, the uses protected by the trust." (*Id.* at pp. 446-447, fn. omitted.)

Section 5937 provides, in relevant part: "The owner of any dam shall allow sufficient water at all times to pass through a fishway, or in the absence of a fishway, allow sufficient water to pass over, around or through the dam, to keep in good condition any fish that may be planted or exist below the dam." Section 5937 is a legislative expression of the public trust. (*California Trout, Inc. v. State Water Resources Control Bd.* (1989) 207 Cal.App.3d 585, 592, 630-631.)

The state courts and the Water Board have concurrent jurisdiction to determine whether particular allocations of water rights are consistent with the public trust. (*National Audubon Society v. Superior Court, supra,* 33 Cal.3d at p. 451.) The City initially suggested it was a trustee vested with the discretion to determine the amount of bypass consistent with the public trust. However, the City now agrees, in accord with an amicus brief filed in this court by the Water Board and DFG, that it is not a trustee of the public trust resources at issue here.

II. *Mootness*

"A case is considered moot when 'the question addressed was at one time a live issue in the case,' but has been deprived of life 'because of events occurring after the judicial process was initiated.' [Citation.] . . . ' "[W]hen . . . an event occurs which renders it impossible for [the] court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to formal judgment . . . ." [Citations.]' [Citation.] The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief." (*Wilson*

4

*& Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.) We review the trial court's determination of mootness de novo (*K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174), but review any underlying findings of fact for substantial evidence (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 461-462).

A. *Injunction to Bypass Sufficient Water*

On appeal, Reynolds contends the bypass plan, even if fully performed, does not bypass enough water to satisfy section 5937 and the public trust. Therefore, he argues, he is entitled to an injunction compelling the City to bypass an amount of water sufficient to keep the fish below the reservoir in good condition. The City initially argued on appeal Reynolds is not entitled to such relief because the enactment of the bypass plan alone fulfilled its obligations under section 5937 and the public trust. The City subsequently conceded the bypass plan's sufficiency has not yet been determined by a trustee of the public trust.

However, in the trial court Reynolds "concede[d]" that his public trust cause of action did not plead and did not take a position on the "quantum of sufficiency" of the bypass. Thus he failed to raise this argument in the trial court. Indeed, Reynolds's initial response to the City's motion was to expressly concede the bypass plan rendered the case moot. In subsequent filings, Reynolds backed away from this concession only slightly, arguing "this matter is moot only if events occur as promised in [the resolution adopting the bypass plan]." At oral argument in the trial court, Reynolds's counsel underscored the narrow scope of his contention: "I acknowledge that [the City] has promised to bypass sufficient water"; "We're not arguing about the terms of the commitment [to bypass water]. We're saying the commitment as it currently exists is not binding."

Reynolds contends he did not waive this argument, citing a brief he filed on a separate motion around the same time as the mootness briefing. Reynolds points to statements in that brief adopting DFG's position with respect to the amount of bypassed water necessary to comply with section 5937 and the public trust, and exhibits documenting DFG's criticism of the bypass plan. However, in this same brief Reynolds

5

reiterated his concession that "this litigation is moot." Accordingly, we conclude Reynolds waived, by failing to raise below, the argument that his lawsuit is not moot because the bypass plan, even if performed, does not bypass a sufficient amount of water to satisfy section 5937 and the public trust.[5] (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.)

Reynolds urges us to exercise our discretion to excuse this waiver. We decline to do so. (*Greenwich S.F., LLC v. Wong, supra,* 190 Cal.App.4th at p. 767.) We note both parties agree the Water Board retains the authority to monitor the City's water bypass and enforce compliance with section 5937 and the public trust. We note further the City concedes a private litigant can challenge the sufficiency of the bypass plan in a subsequent action.

B. *Injunction to Comply with the Bypass Plan*

Reynolds also contends the bypass plan is insufficiently final to moot the lawsuit because the City could repeal or fail to implement it, and he is therefore entitled to an injunction to compel the City to comply with the bypass plan. We disagree.

As an initial matter, both parties have asked this court to judicially notice documents they contend demonstrate the bypass plan either is, or is not, being appropriately implemented. These documents were created after judgment issued and, accordingly, were not submitted to the trial court. "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Reynolds's citation to cases holding events taking place during the pendency of an appeal may be considered if they render the appeal moot (*Eye Dog Foundation v. State Bd. of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541; *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10; *City of Los Angeles v. County of Los Angeles* (1983)

---

[5] Our finding of waiver applies only to Reynolds's argument regarding mootness. We express no opinion as to whether Reynolds can argue the bypass plan is insufficient in a subsequent action.

147 Cal.App.3d 952, 958) does not bear on the question presented here of whether postjudgment occurrences should be considered to determine if the case was moot at the time of judgment.  Accordingly, we deny these requests for judicial notice.[6]

Courts generally presume official duties will be performed and therefore decline to enjoin officials to perform acknowledged legal duties.  (*State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 748-749; *Cooke v. Superior Court* (1989) 213 Cal.App.3d 401, 418.)[7]  The City has acknowledged a duty to bypass sufficient water to keep the fish below the dam in good condition pursuant to section 5937 and the public trust doctrine.  It has formally adopted the bypass plan to comply with that duty.[8]  Accordingly, cases cited by Reynolds in which the defendant official has *not* acknowledged a legal duty are distinguishable.  (See *K.G. v. Meredith, supra,* 204 Cal.App.4th at p. 176 [defendant took the position "that the changes made . . . are not legally mandated"]; *In re J.G.* (2008) 159 Cal.App.4th 1056, 1063 [defendant promised to change challenged policy as to petitioner only, not others similarly situated]; *Kidd v. State of California* (1998)

---

[6]    Specifically, we deny Reynolds's February 27, 2013 request for judicial notice, tabs 34-37, and the City's July 25, 2013 request for judicial notice, exhibits 4-16.  We also deny the remainder of Reynolds's February 27, 2013 request for judicial notice (tabs 23-33, 38-39), and the entirety of his October 7, 2013 request for judicial notice, as these documents were not before the trial court and/or are not relevant to this appeal.  We also deny the remainder of the City's July 25, 2013 request for judicial notice (exhibits 1-3, 17).  Exhibit 17 is not relevant to this appeal.  Exhibits 1-3, communications between plaintiff or his counsel and the City's outside counsel, are already in the record as exhibits to an attorney declaration filed in the trial court.  Moreover, such communications are not proper subjects for judicial notice.  (See *LaChance v. Valverde* (2012) 207 Cal.App.4th 779, 783 [rejecting argument that "e-mails exchanged between a deputy attorney general and counsel for a party to an appeal" are "[o]fficial acts" under Evid. Code, § 452, subd. (c)].)

[7]    No such presumption applied in *Marin County Bd. of Realtors, Inc. v. Palsson* (1976) 16 Cal.3d 920, 924, 929, and *Department of Agriculture v. Tide Oil Co.* (1969) 269 Cal.App.2d 145, 150, relied on by Reynolds, because the defendants in those cases were not government bodies or public officials.

[8]    As discussed above, Reynolds has waived the argument, for mootness purposes, that the bypass plan is not consistent with section 5937 and the public trust.

7

62 Cal.App.4th 386, 397 [defendant rescinded challenged policy but "expressly reserved the option to reinstitute" it]; *Cook v. Craig* (1976) 55 Cal.App.3d 773, 780 [defendant voluntarily complied with plaintiffs' request but maintained it had "no legal obligation" to do so].)

As Reynolds notes, the presumption of good faith can be rebutted by a showing that the defendant's representation it will perform its official duties is not made in good faith. (See *Morris v. Harper* (2001) 94 Cal.App.4th 52, 60 [writ of mandate appropriate where the defendant "acknowledged that he has a duty . . . but he has failed to take the necessary steps to comply with the law for a protracted period of time"].) Reynolds argues the City has not acted in good faith. However, in granting the City's motion to dismiss as moot, the trial court impliedly found the City's resolution adopting the bypass plan was made in good faith. This finding is one of fact. (*Mallon v. City of Long Beach* (1958) 164 Cal.App.2d 178, 186.) The City explained to the trial court it failed to act earlier because it previously believed the Water Board had determined operation of the dam consistent with the terms of the City's licenses satisfied the City's duties pursuant to section 5937 and the public trust. The City further explained that when it learned, from the amicus brief filed in connection with this litigation, this was not the case and it had independent public trust obligations, the City began the process culminating in the resolution adopting the bypass plan. The trial court impliedly credited this explanation, and substantial evidence supports this finding.[9]

As Reynolds is not entitled in this lawsuit to an injunction compelling the City to comply with the bypass plan—the only relief to which he argued below that he was entitled in response to the City's motion to dismiss as moot—we affirm the trial court's order granting the City's motion.[10]

---

[9]     Because of this conclusion, we need not and do not decide the City's argument that Reynolds may challenge the bypass plan only by writ of mandate.

[10]     For the first time in his reply brief, Reynolds raises two additional arguments which were also not raised in the trial court:  he is entitled to relief because the bypass plan is interim rather than permanent, and the passage of the resolution adopting the

III. *Attorney Fees*

Reynolds moved for attorney fees pursuant to Code of Civil Procedure section 1021.5 (section 1021.5) for work performed on the public trust claim. The trial court denied the motion on three independent grounds: "(1) plaintiff had a large, personal financial incentive, which he pursued throughout the litigation, such that the court is unable to find plaintiff was burdened 'out of proportion to his individual stake in the matter.' [Citation]; (2) plaintiff was not a successful party where the true catalyst for the only positive result was regulatory action that began in July of 2008, prior to the filing of plaintiff's government claim; and (3) plaintiff failed to make reasonable attempts to settle the public trust claim."

" 'The Legislature adopted section 1021.5 as a codification of the private attorney general doctrine of attorney fees developed in prior judicial decisions. [Citation.] Under this section, the court may award attorney fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest . . . ." . . . [T]he private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' [Citation.]" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 (*Graham*).)

" 'An appellate court may reverse a trial court decision denying attorney fees under section 1021.5 for a prejudicial abuse of discretion.' [Citation.] 'The pertinent question is whether the grounds given by the court for its denial of an award are

---

bypass plan did not comport with due process. Because he has twice waived these arguments, by failing to raise them in the trial court and failing to raise them in his opening brief, we decline to consider them. (*Greenwich S.F., LLC v. Wong, supra,* 190 Cal.App.4th at p. 767; *Cates v. Chiang* (2013) 213 Cal.App.4th 791, 814-815.)

9

consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of this case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute.' [Citation.]" (*State Water Resources Control Bd. Cases* (2008) 161 Cal.App.4th 304, 312.)

A. *Causal Connection*

"Under the catalyst theory, attorney fees may be awarded even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." (*Graham, supra,* 34 Cal.4th at p. 560.) "[I]n order to justify a fee award, there must be a causal connection between the lawsuit and the relief obtained." (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 353.) Thus, where a defendant's voluntary action achieves a public benefit sought by the litigation, it must be shown that "the defendant's 'voluntary' action was 'induced by' the plaintiff's legal action. [Citation.]" (*Ibid.*)

The trial court found, and the City here argues, the catalyst of the City's changed behavior—the acknowledgement of its duty to bypass water and the development of a plan to do so—was regulatory action that began in 2008. The record shows the Water Board received a complaint in 2008 alleging the City's operation of the dam failed to provide adequate water below the dam. However, there is no record of any Water Board enforcement action taken in connection with this administrative complaint.

Indeed, while the City contends generally that a regulatory investigation caused its changed conduct, it identifies only the amicus briefs jointly filed by the Water Board and DFG in this action as the critical event causing its changed conduct. As discussed above, these briefs were filed in support of Reynolds's motion for reconsideration of the trial court's order dismissing his public trust claim. There is no suggestion, in the briefs or otherwise, that their filing had anything to do with an independent investigation or even that such an investigation was ongoing.[11] We see no relevance in the fact that the critical

---

[11]    To the contrary, the Water Board and DFG emphasized in the briefs their limited resources precluded them from pursuing every public trust violation.

briefs were filed by regulatory agencies, rather than by Reynolds. The briefs were filed solely as a result of Reynolds's litigation, and the litigation thus caused the changed behavior. The trial court's contrary finding was not supported by substantial evidence.

B. *Reasonable Attempts to Settle*

In *Graham,* the California Supreme Court concluded "a plaintiff seeking attorney fees under a catalyst theory must first reasonably attempt to settle the matter short of litigation. [Citation.] We believe this requirement is fully consistent with the basic objectives behind section 1021.5 and with one of its explicit requirements—the 'necessity . . . of private enforcement' of the public interest. Awarding attorney fees for litigation when those rights could have been vindicated by reasonable efforts short of litigation does not advance that objective and encourages lawsuits that are more opportunistic than authentically for the public good. Lengthy prelitigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time." (*Graham, supra,* 34 Cal.4th at p. 577.)

"[T]he prelitigation notice requirement is an important categorical rule in section 1021.5 catalyst cases and cannot be ignored merely because the court believes it would be equitable for the plaintiff to receive a fee award or that the plaintiff had a good excuse for failing to engage in these efforts. But because it is a judicially created rule to promote the purposes of section 1021.5 and deter attorneys from filing meritless suits merely to obtain attorney fees, it should not be applied to bar an attorney fees recovery where to do so would defeat the core purpose of the statute." (*Cates v. Chiang, supra,* 213 Cal.App.4th at p. 816.) Accordingly, "the rule should not be applied blindly without any consideration of whether the demand would have made any difference in the need for the lawsuit and whether the plaintiff's motivations were directed toward seeking the relief demanded, as opposed to the recovery of attorney fees." (*Id.* at p. 817 [affirming trial court order awarding fees despite insufficient prelitigation notice because additional notice would have been futile].)

11

We conclude this requirement does not preclude Reynolds from obtaining fees. First, it is undisputed that Reynolds provided the City with some prelitigation notice of this public trust claim. According to a declaration filed by Reynolds in support of the fees motion, in November 2008 he presented a City official with information indicating the historic presence of native fish in the waters below the dam, and "argued that any ground flow contribution of water to [the reservoir] was part of the public trust and that [the City] had an obligation to bypass sufficient water all year round." In a responding declaration, the City official did not contradict this account. However, the City official noted he held several meetings with Reynolds in 2008 about the private damages claims, and the public trust issue "was not the principal area of discussion" at that time. Reynolds also presented a claim pursuant to Government Code section 910, received by the City on December 2, 2008. Although the majority of the claim involved Reynolds's private damages claims, it also stated: "City is further guilty of violating the Public Trust by failing to provide adequate water flow within Kimball Creek in an amount sufficient to sustain the indigenous population of Steel Head trout . . . ." The City returned the claim as untimely.

Second, the record is unequivocal that any additional prelitigation settlement efforts would have been futile. On receipt of the complaint alleging the public trust claim, the City did not change its conduct. To the contrary, it vigorously fought the public trust claim, arguing it was not the proper defendant and the Water Board had already determined the City's appropriations were consistent with the public trust. As discussed above, the City itself maintains it only changed its conduct after the Water Board and DFG filed amicus briefs during the litigation.

Finally, Reynolds litigated this case in propia persona for approximately the first year of litigation. Accordingly, it cannot be contended that the public trust claim was a " 'nuisance suit[] by unscrupulous attorneys hoping to obtain fees without having the merits of their suit adjudicated' "—the concern targeted by the requirement of prelitigation settlement efforts. (*Cates v. Chiang, supra,* 213 Cal.App.4th at p. 806.)

12

The requirement of prelitigation settlement efforts is intended to preclude "[a]warding attorney fees for litigation when those rights could have been vindicated by reasonable efforts short of litigation" and to discourage "lawsuits that are more opportunistic than authentically for the public good." (*Graham, supra,* 34 Cal.4th at p. 577.)  Reynolds notified the City of the public trust claim before filing the lawsuit; additional efforts to settle would have been futile; and the public trust claim was not brought as a nuisance suit to generate attorney fees.[12]  Under these circumstances, precluding Reynolds from obtaining section 1021.5 fees on the ground that he failed to make sufficient prelitigation efforts to settle would undermine the intent of the statute. The trial court's finding of insufficient efforts was not supported by substantial evidence.

C. *Disproportionate Financial Burden*

The requirement in section 1021.5 of " 'the necessity and financial burden of private enforcement' " has been "long construed . . . to mean, among other things, that a litigant who has a financial interest in the litigation may be disqualified from obtaining such fees when expected or realized financial gains offset litigation costs." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1211 (*Whitley*).)  " ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]" ' [Citation.]  'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.' [Citation.]" (*Id.* at p. 1215.)  The court " 'place[s] the estimated value of the case beside the actual cost and make[s] the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to

---

[12]     *Abouab v. City and County of San Francisco* (2006) 141 Cal.App.4th 643, relied on by the City, stands in sharp contrast to this case.  In *Abouab*, the petitioners provided no prelitigation notice of their claim, the defendant voluntarily took steps addressing the claim immediately upon service of the lawsuit and informed the petitioners it had done so, and the petitioners proposed a settlement within six months of the lawsuit's filing which included an attorney fee payment of approximately $10 million. (*Id.* at pp. 651-652, 673.)

encourage litigation of the sort involved in this case. . . . [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' [Citation.]" (*Id.* at p. 1216.) This requirement should be construed in light of the concern underlying section 1021.5 with "the infeasibility of [pursuing public interest litigation] because of large attorney fees and nonpecuniary outcomes that make 'these cases . . . prohibitively expensive for almost all citizens.' [Citation.]" (*Id.* at p. 1224.)

Reynolds does not dispute that he had sufficient pecuniary incentive to litigate the private claims; he seeks fees solely for work performed on the public trust claim. Reynolds's complaint did not seek any damages in connection with the public trust claim, and we are aware of no authority by which he would be entitled to damages on that claim. The City has not identified any damages or other pecuniary gain Reynolds could have obtained directly from the court or as a result of success on the public trust claim. Nor does it contend success on the public trust claim would have strengthened Reynolds's chances of success on the private damages claims or increased the amount of his potential pecuniary recovery on those claims.[13]

The fact that Reynolds anticipated financial benefit from his entirely separate private claims does not preclude him from obtaining section 1021.5 fees for work on the public trust claim. (*Hammond v. Agran* (2002) 99 Cal.App.4th 115, 132-133 [partially reversing trial court's denial of § 1021.5 fees for work on issue as to which the plaintiff had no personal interest], disapproved of on another ground by *Whitley, supra,* 50 Cal.4th at p. 1226, fn. 4; see also *Saleeby v. State Bar* (1985) 39 Cal.3d 547, 574 ["Petitioner's 'personal interest' was to some degree involved and it therefore may be appropriate to

---

[13] Indeed, the City argued in a pleading earlier in the proceedings, "Factual and legal issues surrounding whether the City owes Reynolds damages for its past use of water from Kimball Creek are entirely unrelated to whether the City must release water from its reservoir under environmental laws." The case relied on by the City on appeal, *Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 114, in which the public benefit gained through the litigation saved the plaintiff $300,000 and "was wholly coincidental to [the plaintiff's] profit-making goals," is thus inapposite.

determine what portion of the fees [sought under § 1021.5] should be attributed to issues transcending that personal interest and what part should be deemed to arise out of petitioner's individual claim"].) Accordingly, the trial court applied the wrong legal standard by relying on the pecuniary gain Reynolds anticipated on the private damages claims to deny the recovery of any fees for work on the public trust claim.

The City points to settlement demands to contend Reynolds thought he could gain personal financial benefit from the public trust claim. As an initial matter, the City cites no authority suggesting a plaintiff's mistaken belief that he or she is entitled to damages on a claim could defeat the entitlement to fees pursuant to section 1021.5. In any event, Reynolds's counsel clearly stated in a May 2010 settlement communication that any monetary penalties for past public trust violations "naturally are paid to the State, not to Mr. Reynolds."[14] An August 2010 settlement offer from Reynolds addressed the two categories of claims separately, first discussing the public trust claim and setting forth demands, which did not include any monetary award paid to him.[15] In September 2010, the parties reached a tentative settlement of the public trust claim only; the terms again included no pecuniary advantage to Reynolds. Although the tentative settlement eventually collapsed, the City does not contend—nor does any evidence suggest—that it collapsed because Reynolds insisted on additional terms for his financial benefit. None of Reynolds's settlement communications in the record suggest settling the public trust claim in exchange for a monetary award paid to Reynolds. Instead, his demands consistently include some provision that the City change its practices to increase water flow for the fish below the dam.[16]

---

[14]     In this May 2010 settlement communication to the City, Reynolds's counsel also stated, with respect to settlement negotiations, "the public interest claim is the primary concern, clarification of water rights going forward is the secondary concern, and damages for past acts only bring up the rear."

[15]     Reynolds's settlement offer noted its terms were subject to review by the Water Board and DFG.

[16]     The City emphasizes a settlement demand from Reynolds made after the trial court dismissed the private damages claims which still provided future private water rights

In sum, we reverse the trial court's order denying Reynolds any attorney fees pursuant to section 1021.5. We decline Reynolds's request that we determine the amount of reasonable fees to which he is entitled, and remand that determination to the trial court. (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1517 [determination of the amount of fees "is a factual issue more properly considered in the first instance by the trial court on remand"].)

DISPOSITION

The judgment appealed from in appeal No. A134190 is affirmed. The postjudgment order denying Reynolds attorney fees, appealed from in appeal No. A135501, is reversed and remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

 

 

_____
SIMONS, J.

 

We concur.

 

 

_____
JONES, P.J.

 

 

_____
BRUINIERS, J.

_____

benefitting Reynolds. But this demand also included a term that the City bypass water pursuant to recommendations made by an environmental organization. Moreover, Reynolds had not yet exhausted his appellate rights regarding the private damages claims.

16