Filed 5/2/16

**CERTIFIED FOR PUBLICATION**

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HEARN PACIFIC CORPORATION,<br><br>      Cross-Complainant and Respondent,<br><br>v.<br><br>SECOND GENERATION ROOFING INC.,<br><br>      Cross-Defendant and Appellant. | A142203<br><br>(Sonoma County<br>Super. Ct. No. SCV-240665) |

**INTRODUCTION**

At issue in this appeal is a trial court's authority to amend a judgment to add the name of an additional judgment debtor. It involves a civil procedure game of cat-and-mouse like none we have before encountered.

Cross-defendant Second Generation Roofing, Inc., a roofing subcontractor involved in multi-party construction defect litigation, successfully defeated indemnity and related cross-claims asserted against it by the project's general contractor, Hearn Pacific Corporation (Hearn). It then secured a roughly $210,000 award of prevailing party attorney fees and costs against the general contractor, embodied in two separate orders, pursuant to a fee clause contained in the subcontract. It now appeals from an order denying its motion to amend the two attorney fees orders to add one of the general contractor's insurers as a judgment debtor. The insurer, it maintained, had taken an assignment of the general contractor's contractual indemnity rights during the litigation, had in fact been the entity that prosecuted the cross-claims to final judgment (in the general contractor's name), and as such was the real party in interest liable on the resulting fee award.

1

Its motion was brought under several provisions of the Code of Civil Procedure, including section 368.5.[1]  That provision states:  "An action or proceeding does not abate by the transfer of an interest in the action or proceeding or by any other transfer of an interest.  The action or proceeding may be continued in the name of the original party, *or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding*."  (§ 368.5, italics added.)

For reasons not apparent in the record (but ultimately disclosed at oral argument), the nominal judgment debtor, Hearn, opposed the subcontractor's effort to add its insurer as a named judgment debtor.  It now continues to press that position on appeal, and even goes so far as to deny the validity of the assignment it executed, disavow sworn statements that its counsel filed below, and contradict allegations in its pleadings that are directly dispositive of the issues on appeal.  We find its arguments troubling, to say the least, and its position puzzling.  That an insured, faced with a liability imposed nominally upon *it* in excess of $210,000 (and increasing annually by 10 percent (see § 685.010)), would go to such lengths to protect *its insurer* from being named liable on that judgment debt suggests to us only one thing, which is exactly what this record shows too *and* its counsel revealed at oral argument: the insurer, not its insured, is indeed conducting this litigation.

By virtue of the assignment taken in this case, Hearn's insurer is the real party in interest here.  The trial court declined to amend the judgment to name the general contractor's insurer as an additional judgment debtor.  We hold that it abused its discretion under section 368.5, and reverse.

## BACKGROUND

Hearn acted as the general contractor on a project in Sonoma County for the construction of a mixed-use building.  In 2007, the project's owner brought suit for design and construction defects against multiple parties, including Hearn and Second

---

[1]  Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

Generation Roofing. Hearn cross-complained against Second Generation Roofing and other subcontractors, alleging causes of action for breach of contract, professional negligence, express indemnity, implied indemnity, equitable indemnity, breach of warranties, comparative negligence and contribution.[2]

Two years later, in August 2009, Hearn executed an agreement assigning its rights and interests under its subcontracts to two insurers, North American Specialty Insurance Company (North American) and RSUI Group, Inc. The assignment agreement states:

> HEARN hereby assigns to its defending insurers, North American Specialty Insurance Company and RSUI Group, Inc. (the "INSURERS"), all rights and interests under its subcontracts for the project located at 235 Healdsburg Avenue, Healdsburg, Sonoma County, California, including but not limited to, any obligation of any subcontractor or supplier to defend, indemnify or hold harmless, or to pay attorneys' fees in equity or by operation of law, to the extent of the defense costs or other expenses incurred by the lNSURERS arising from and relating to *Deas Family Limited Partnership* v. *Hearn Pacific Corporation, et al.*, Sonoma County Superior Court Case No. SCV-240665 ("subject action"). HEARN agrees to this assignment provided, however, that HEARN retains its rights and interest to the extent it has incurred defense costs or other expenses defending against the subject action, prosecuting its cross-complaint or satisfying or paying insurance policy deductibles or self-insured retentions.
>
> The INSURERS may pursue their recovery along with HEARN and/or in HEARN's name in the subject action or any subsequent action. The effect of this Agreement is cumulative along with any assignments to the INSURERS by operation of law or in equity.
>
> This assignment should not be construed to limit the rights of either HEARN or any of the INSURERS to be fully compensated for costs, expenses, attorneys' fees, expert fees or any other expenses incurred because of or in connection with the subject action.

Thereafter, in December 2009, Hearn settled with the plaintiff and all but two subcontractors, one of which was Second Generation Roofing.

---

[2] The subcontracts are not in the record.

3

Subsequently, in April 2012, Hearn filed a first amended cross-complaint against Second Generation Roofing and the other remaining subcontractor. The amended pleading alleged causes of action for breach of a contractual duty to defend it in the underlying litigation, equitable contribution premised on a duty to defend Hearn, express indemnity, breach of a contractual obligation to obtain insurance, equitable contribution for Hearn's defense costs premised on a breach of their duty to obtain insurance coverage, implied indemnity, and contribution/apportionment of fault. It sought indemnity from any damages or judgment entered in the plaintiff's favor in the underlying case, reimbursement of its defense costs in the underlying case, and an award of prevailing party costs and attorney fees incurred in pursuit of the cross-claims.

The amended cross-complaint, which was unverified, included allegations concerning the assignment. It alleged that "HEARN assigned its rights under the subcontracts with the cross-defendants, including . . . [Second Generation Roofing], to its insurers on August 20, 2009," and that "Pursuant to C.C.P. § 368.5 and *Greco v. Oregon Mutual Insurance Co.* (1961) 191 Cal.App.2d 674, HEARN's insurers are asserting claims in this action in the name of the [*sic*] HEARN assigned to them by HEARN through operation of law." The cited authority, *Greco v. Oregon Mutual Insurance Co.* (1961) 191 Cal.App.2d 674, addresses the impact of an assignment on the proper parties to litigation (*id.* at pp. 686–688). It states, among other things, that "if the assignment occurs after suit has been filed, the action may be continued in the name of the assignor, or the court may permit the assignee to be substituted therein (Code Civ. Proc., § 385), and a judgment in favor of the assignor under these circumstances, when no change of party plaintiff has occurred, will be sustained." (*Id*. at p. 687.)

The amended cross-complaint also alleged, "Pursuant to the Court of Appeal's holding in *Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Service Company*, 191 Cal. App. 4th 1394 (2011) [*Searles*], the fact that HEARN did not literally pay its defense costs, after . . . [Second Generation Roofing] refused to, does not absolve . . . [Second Generation Roofing] from [its] obligation to pay HEARN's defense costs." The cited authority, *Searles*, authorizes the assignee of contractual indemnity rights to

4

recover the defense costs it paid on the assignor's behalf by enforcing the assigned indemnity rights. (*Searles*, at pp. 1396–1397.)

Later in the case, one of Hearn's attorneys filed a declaration in support of a motion for summary adjudication stating that, "Hearn's defending insurers are suing in Hearn's name as transferees of Hearn's contractual indemnity rights, including the right to obtain equitable contribution for defense costs incurred herein from co-indemnitors such as Second Generation Roofing, Inc."

Eventually, on April 4, 2013, the litigation terminated successfully in Second Generation Roofing's favor, with dismissal of the cross-complaint against it on procedural grounds. In the same order, the trial court awarded it $30,256.79 in costs and granted a motion for attorney fees pursuant to a prevailing party attorney fee clause contained in the subcontract.[3] The court entered a later order, on June 12, 2013, awarding attorney fees in the amount of $179,119 and Hearn noticed an appeal from that ruling.

Second Generation Roofing then moved under both Code of Civil Procedure sections 187 and 368.5, and pursuant to the court's inherent powers, to amend both orders to name one of Hearn's two insurers, North American, as a judgment debtor owing the amounts awarded against Hearn. Second Generation Roofing argued that the cross-complaint had been prosecuted by North American as Hearn's assignee, in Hearn's purported name, and North American was in fact the true cross-complainant. In a footnote, it argued that "[a]t this time, for its own reasons, [Second Generation Roofing] does not seek an order providing it the same relief as against RSUI Group, Inc., the other insurer to whom Hearn assigned its rights, according to the assignment agreement." Its papers argued, too, that the award against Hearn could not be readily collected, because

---

[3] The motion for attorney fees is not in the record. However, all of the parties' arguments on appeal are premised on the assumption the fee award was based on the attorney fee clause of the subcontract, and counsel confirmed this at oral argument.

Hearn was merely a dba for another entity that by then was apparently a dissolved corporation.[4]

The evidentiary basis for the motion consisted of the allegations of the first amended cross-complaint; the assignment agreement, as authenticated in a declaration by the Hearn board member who had entered into it, which had been filed in support of an earlier motion by Hearn for summary adjudication; and the sworn declaration of Hearn's counsel we have described, also submitted in support of an earlier summary adjudication motion.

Hearn submitted no evidence in opposition other than a declaration by its counsel stating, in pertinent part, that "Hearn's insurer [North American] agreed to defend Hearn in this matter under a Reservation of Rights, which limits the terms of its participation in the litigation to the defense of Hearn from the plaintiff's claims. The scope of [North American]'s defense of Hearn is closely circumscribed by the terms of [North American]'s insuring agreement and does not extend to a duty to indemnify Hearn."

Hearn also objected to the declaration by Hearn's board member that Hearn itself had submitted in support of its motion for summary adjudication and to the assignment agreement that declaration authenticated and attached as an exhibit. It argued those materials were inadmissible and should be disregarded because they had been filed in support of a different motion.

Hearn did not dispute the existence of the assignment. In its opposition memorandum of points and authorities, Hearn stated that "[a]fter Hearn sought reimbursement from the subcontractors for its defense costs, under the provisions of the subcontract agreements, some of the subcontractors, including Second Generation, refused to reimburse Hearn. Accordingly, Hearn assigned some of its contractual rights to its insurers so they might pursue the subcontractors separately to recover their defense costs."

---

[4] Second Generation Roofing introduced no evidence of the dissolution. Counsel for Hearn maintained at oral argument, however, that this is true.

6

The trial court denied the motion in an eight-page ruling. It sustained Hearn's objection to the board member's summary adjudication declaration, ruling it inadmissible on the ground that "it would be unfair to bind Hearn by allegations, statements or concessions made in the context of a motion for summary adjudication for a wholly separate motion by Second Generation Roofing to amend a judgment." It also ruled the motion was "procedurally defective, since the trial court lost jurisdiction of the matter on Hearn's appeal of the judgment."

The court also denied Second Generation Roofing's motion on the merits. The fairest interpretation of its comments is that it understood a court's power under section 187 to amend a judgment to add additional judgment debtors to be limited to alter ego cases, and concluded Second Generation Roofing had not proved Hearn and its insurer were alter egos.

The court's ruling under section 368.5 is reflected in comments directed to the admissibility of Second Generation Roofing's evidence. The court stated: "Even if the Court were to accept the admissibility of Hearn's Motion for Summary Adjudication Declaration and accompanying assignment, the assignment does not extend any rights to Hearn's insurers which they did not already possess under the operation of law. CCP §368.5 permits a case to proceed unabated upon a party's assignment (or partial assignment) of rights to another party, with the case proceeding in the original party's name. As such, Hearn remains the only proper party in this matter. Hearn's partial assignment of rights (that the subcontractors owe it under their subcontracts) to its insurers does not alter the fact that the litigation may continue in Hearn's name. After Hearn sought reimbursement from the subcontractors for its defense costs, under the provisions of the subcontract agreements, some of the subcontractors, including Second Generation Roofing, refused to reimburse Hearn. Accordingly, Hearn assigned some of its contractual rights to its insurers so they might pursue the subcontractors separately to recover their defense costs. [¶] Accordingly, Plaintiff's purported evidence is inadmissible."

7

The trial court also ruled that Second Generation Roofing's motion was improper, reasoning the subcontractor's exclusive remedy was to pursue a separate action against Hearn's insurers under Insurance Code section 11580 to recover against Hearn's insurance policy proceeds, subject to the terms of the policies.

This timely appeal followed.

## DISCUSSION

### I.

### *Evidentiary Issues*

Before turning to the merits, we first clarify that our review is based on all the evidence Second Generation Roofing submitted in the trial court. On appeal, Second Generation Roofing challenges the court's exclusion of some of its evidence, and we agree the trial court erred. Conversely, Hearn contends the allegations of its first amended complaint must be disregarded on appeal, and we reject that contention.

**A. The Trial Court Erroneously Excluded the Stankowski Declaration.**

To recap, in support of its motion, Second Generation Roofing submitted two declarations that had been filed previously in support of summary adjudication motions. One was the "Declaration of Gordon Stankowski in Support of Defendant Hearn Pacific Corporation's Motion for Summary Adjudication Against Cross-Defendant Second Generation Roofing, Inc.," dated August 20, 2009, which attached a copy of the assignment agreement and authenticated it as an agreement Stankowski, a Hearn board member, had entered into on Hearn's behalf. The other was the declaration by one of Hearn's attorneys, which averred among other things that "Hearn's defending insurers are suing in Hearn's name as transferees of Hearn's contractual indemnity rights, including the right to obtain equitable contribution for defense costs incurred herein from co-indemnitors such as Second Generation Roofing, Inc."

Second Generation Roofing contends the trial court erroneously excluded both declarations, and while we agree the trial court erred, the record shows Hearn objected to, and the trial court excluded, only the Stankowski declaration, including the attached

8

assignment agreement.[5]  The trial court ruled this declaration was inadmissible because it was filed in support of a motion for summary adjudication.  Citing *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735 (*Myers*), it reasoned that "[a] motion for summary adjudication, and its accompanying papers, are not pleadings within the definition of CCP §422.10," and under *Myers* "it would be unfair to bind Hearn by allegations, statements or concessions made in the context of a motion for summary adjudication for a wholly separate motion by Second Generation Roofing to amend a judgment."

The trial court erred in excluding this declaration.  *Myers* offers no support for the court's ruling; the case deals with judicial admissions, not the rules of evidence.  It holds that a factual concession in a separate statement of undisputed fact filed for purposes of a summary judgment motion does not constitute a binding judicial admission that estops a party from later contesting the fact at trial.  (*Myers*, *supra*, 178 Cal.App.4th at pp. 746–749.)

Hearn nonetheless argues the case is analogous, because "the reasoning applied to any evidence not considered a pleading" filed in support of a summary judgment motion, and urges us to extend *Myers* to declarations.  We disagree.  *Myers* distinguished a separate statement of undisputed fact from evidentiary materials such as declarations.  (See *Myers*, *supra*, 178 Cal.App.4th at p. 747 [" 'It is not evidence (because not under oath or verified); nor is it a judicial admission' "].)  Furthermore, Second Generation Roofing did not proffer the Stankowski declaration in order to *estop* Hearn from contesting any facts concerning the assignment; it did so in order to *prove* the fact of the

---

[5]  Hearn's objection did not specify that declaration by name but unmistakably referred only to it, in the singular.  Hearn objected to "evidence of a declaration and accompanying partial assignment of certain rights which was originally filed with this Court in support of a motion for summary adjudication."  And it argued, "the Declaration and accompanying evidence (including the partial assignment agreement) relied upon by Second Generation in its motion must be disregarded . . . ."  The trial court's ruling likewise was framed in the singular, repeating the above-quoted portion of Hearn's objection *verbatim*.  On appeal, Hearn does not argue the trial court excluded both declarations; it argues only that both are inadmissible.

assignment and its terms. Nothing in *Myers'* reasoning precludes a party from re-introducing into evidence a declaration previously admitted into evidence on summary judgment, and we decline to extend *Myers* to this wholly different situation.

Nor was there any "unfair[ness] to Hearn." Hearn was certainly free to respond with additional declarations or other evidence to try to rebut, or qualify, its board member's earlier sworn statements, but it didn't do that. The only unfairness we perceive would be to allow *it* to proffer this sworn declaration as evidence but then later prevent *its opponent* from doing exactly the same thing.

Hearn did not below, and does not now, contend the Stankowski declaration is made inadmissible by any provision of the Evidence Code, and we agree with Second Generation Roofing it should have been admitted.[6] (See Evid. Code, § 351 ["Except as otherwise provided by statute, all relevant evidence is admissible"]; see also §§ 2011 [affidavit "is prima facie evidence of the facts stated therein"], 2015.5 [declarations under penalty of perjury]; *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 610 ["A valid declaration has the same 'force and effect' as an affidavit administered under oath"]; *Bank of America Nat'l Trust & Savings Ass'n v. Taliaferro* (1956) 144 Cal.App.2d 578, 581–583 (per curiam) [contract of assignment held properly admitted].)

Ordinarily, an appellate court may not rely upon evidence excluded by the trial court in reviewing the sufficiency of the evidence (see *Shepherd v. Turner* (1900) 129 Cal. 530, 532; *Arditto v. Putnam* (1963) 214 Cal.App.2d 633, 640; 4 Cal.Jur.3d (2016) Appellate Review, § 335), but here there is no point in a remand for the trial court to reconsider its ruling in light of this improperly excluded evidence. When there is no conflict in the relevant extrinsic evidence, as here, the interpretation of a contract presents

---

[6] Evidentiary rulings ordinarily are reviewed for abuse of discretion, but because the trial court based its ruling here on a conclusion of law, our review is de novo. (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) Furthermore, a court abuses its discretion by " ' "transgress[ing] the confines of the applicable principles of law" ' " (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 833), so the distinction between standards of review is immaterial here since the trial court misapplied the law.

a pure question of law for the appellate court.  (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866.)  Therefore, we will proceed to an analysis of the merits based upon our independent determination of the assignment agreement's meaning.

### B. The Allegations of the First Amended Complaint Are Properly Considered on Appeal.

Mounting yet another attack on the assignment, Hearn argues for the first time on appeal that the allegations of its first amended complaint concerning the assignment "have no evidentiary value," because the complaint was unverified.  But because Hearn did not object below to Second Generation Roofing's reliance on those allegations, the contention is forfeited.  " ' "[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal." ' " (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

Furthermore, we agree with Second Generation Roofing that these allegations constitute a binding judicial admission, and Hearn's evidentiary objection misses the point.  Hearn cites authority standing only for the proposition that the allegations of an unverified complaint may not be used by the pleading party *offensively*, as evidence against another party in the context of a contested motion, because "the complaint was unverified and therefore could not serve as an affidavit." (*Sheard v. Superior Court* (1974) 40 Cal.App.3d 207, 212.)  But a pleading party may be *bound by* the factual allegations it makes in a complaint, even if the complaint is not verified.[7]  "It is presumed that even an unverified pleading is filed with the consent of the client and should be regarded as an admission." (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1412; see, e.g., *Reichert v. Gen. Ins. Co.* (1968 ) 68 Cal.2d 822, 835–837 [allegation of unverified complaint held binding]; *Womack v. Lovell* (2015) 237 Cal.App.4th 772, 786–787 [same].)  This is consistent with the nature and purpose of a pleading, whether verified or

---

[7] Exceptions have been recognized when an unverified complaint has been superseded by an amended pleading (see, e.g., *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456) or is ambiguous (*Kirby v. Albert D. Seeno Construction Co.* (1991) 11 Cal.App.4th 1059, 1066–1067), but neither is true here.

not: " 'An admission in the pleadings is not treated procedurally as evidence,' " because " 'it is fundamentally different from evidence: It is a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the matter from the issues.' " (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271, quoting 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 413, pp. 510–511.) At least in the absence of some showing of mistake or inadvertence by the pleading party (*Reichhert*, at pp. 836–837), and as long as the opposing party is not contesting the factual allegation (see *Barsegian v. Kessler & Kessler*, 215 Cal.App.4th 446, 451–453), there is nothing unfair or inappropriate about holding a party to the truth of its unverified factual allegations. Therefore, we will not ignore Hearn's allegations in considering whether the trial court erred in denying Second Generation Roofing's motion.

We now turn to the merits.

## II.

### *The Trial Court Abused Its Discretion in Declining to Amend the Judgment Under Code of Civil Procedure Section 368.5.*

The focus of much of the parties' lengthy briefing, and the trial court's ruling, is on Code of Civil Procedure section 187, a provision that empowers trial courts to amend a judgment to add additional judgment debtors in appropriate circumstances and most frequently has been invoked in the context of alter egos (see, e.g., *Danko v O'Reilly* (2014) 232 Cal.App.4th 732, 735–736; *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1072–1073; *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 508–510) or similar theories by which the corporate form of the original judgment debtor may be disregarded.[8] (See, e.g., *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1188–1194 [sole equity partner of dissolved limited liability

---

[8] Code of Civil Procedure section 187 states: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

12

partnership]; *McClellan v. Northridge Park Townhome Owners Ass'n* (2001) 89 Cal.App.4th 746, 752–755 [successor corporation].) But it is unnecessary here to decide whether, and to what extent, the court's equitable power to add an additional judgment debtor under section 187 is limited to alter egos or similar veil-piercing scenarios. That question is somewhat complex, and the law unsettled. (Compare, e.g., *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 116 (*Tokio Marine*); *Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1420 with *Carolina Casualty Ins. Co.*, at pp. 1188–1189; *Carr v. Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14, 21–23; *In re Levander* (9th Cir. 1999) 180 F.3d 1114, 1122.)[9]

This case can be decided on a more straightforward ground. On its face, section 187 applies only "if the course of proceeding be not specifically pointed out by this Code or the statute." Here, the course of proceedings *is* specifically addressed by another provision of the Code of Civil Procedure: section 368.5, quoted *ante*, which was the alternate basis for Second Generation Roofing's motion.

Section 368.5 is derived without substantive change from former section 385. (22 Cal. L. Revision Com. Rep. (1992) p. 922.) Under the case law construing that statute, trial courts have discretion to allow litigation to continue in the name of the original plaintiff rather than substitute the transferee. (*Alameda County Home Inv. Co. v. Whitaker* (1933) 217 Cal. 231, 234.) But the transfer of a party's interest in the subject of

---

**9** Hearn discusses at some length *Tokio Marine*, *supra*, 75 Cal.App.4th 110 in an argument captioned under the heading, "The Assignment Does Not Create An Alter Ego." *Tokio Marine* held that summarily adding a defendant's insurers to a judgment rendered against the insured not only was unauthorized by various provisions of the Code of Civil Procedure, including section 187 (*Tokio Marine*, at pp. 116–117), but also violated due process. (*Id*. at pp. 119–124.) Hearn does not invoke the latter holding nor contend that amending the judgment to add North American would offend due process, and so we have no occasion to address that issue. We note, however, that amending a judgment to insert the true name of the real party in interest who pursued claims to final judgment in the original plaintiff's name, as here, presents a considerably different due process calculus than amending a judgment to add the name of a non-party who never participated, or asserted any claims, in the lawsuit. (Cf., e.g., *Nelson v. Adams USA, Inc.* (2000) 529 U.S. 460; *Higgins v. Kay* (1914) 168 Cal. 468, 471–473.)

an action transfers the right to control the action. (*Walker v. Felt* (1899) 54 Cal. 386, 387; see also *Crescent Canal Co. v. Montgomery* (1904) 124 Cal. 134.) And if the action does continue in the original party's name, the original party remains as only a nominal party whereas the real party in interest is the transferee. (See *Crescent Canal Co*., 124 Cal. at pp. 143, 144; *Tuffree v. Stearns Ranchos Co.* (1899) 124 Cal. 306, 308 (*Tuffree*)). "Possibly the opposing party, for reasons readily perceptible, might be desirous of having the real party in interest substituted as a party to the record; but if such party is willing to have matters stand *statu quo*, and the real party in interest is content to have matters proceed upon the old lines, . . . [t]he real plaintiff or defendant simply uses the name of another in the further prosecution or defense of the action." (*Tuffree*, at p. 309.) As Witkin describes it, "The transferee's election to allow the proceeding to continue in the name of the original party is at most a matter of procedural convenience." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 263, p. 340.) It appears that in this case, up until entry of the orders awarding fees and costs, the parties were content to allow matters to proceed in this fashion.

The statute was not meant to be used as a shield, however. For example, in *Keeling Collection Agency v. McKeever* (1930) 209 Cal. 625, the Supreme Court observed in dictum that the buyer of property at issue in a foreclosure suit "could not avoid the requirement of [an appeal] bond through the device of continuing the appeal in the name of the nominal appellants (sec[tion] 385, Code Civ. Proc.) rather than securing a substitution of parties." (*Id*. at p. 628.) And the Supreme Court in dictum has recognized an opposing party's right to ask that a transferee be substituted in under the statute. (See *Higgins v. Kay*, *supra*, 168 Cal. at p. 472; *Tuffree*, *supra*, 124 Cal. at p. 309; *Campbell v. West* (1892) 93 Cal. 653, 656.) In particular, authority not cited by the parties recognizes a trial court's power to order that a judgment debtor's transferee be substituted in as a party, and ordered bound by the judgment, so that a judgment creditor does not get left holding a judgment that proves difficult or impossible to collect. (See *Erickson v. Boothe* (1949) 90 Cal.App.2d 457, 459–460.)

14

The trial court should have done so here. It gave no reason to continue the action solely in Hearn's name when Second Generation Roofing sought to add North American to the two orders, and none appears. By contrast, Second Generation Roofing had a liquidated right—adjudicated by court order—to collect its attorney fees and costs as a prevailing party. We hold in these circumstances it was an abuse of discretion[10] to refuse its request to add the name of the real party in interest, Hearn's assignee, who pressed claims in the name of the party nominally adjudged liable by these orders. The trial court's denial of this relief appears to be arbitrary.[11]

Furthermore, as Second Generation Roofing argues, that relief is consistent with the law governing contractual attorney fees. Had Hearn's insurer exercised its right to formally substitute in as the real party in interest, rather than remain on the sidelines and sue in Hearn's name, it could have been held directly liable for Second Generation Roofing's prevailing party attorney fees under the subcontract, as an assignee. (See *Erickson v. R.E.M. Concepts, Inc.* (2005) 126 Cal.App.4th 1073, 1086–1087 (*Erickson*) [deciding the issue as a matter of law]; *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1288–1292 (*Heppler*) [deciding the issue on the basis of conflicting extrinsic evidence, under substantial evidence standard]; *California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.* (2002) 96 Cal.App.4th 598, 605–610 [deciding the issue as a matter of law].) That is because an assignee's acceptance of the benefits of a contract containing a fee clause, by bringing suit, constitutes an implied assumption of

---

[10] We review the court's ruling under section 368.5 for abuse of discretion. (See *Erickson v. Boothe*, *supra*, 90 Cal.App.2d at p. 460 [applying former section 385].)

[11] Second Generation Roofing relies extensively on this court's decision in *CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, which involved somewhat similar facts but is inapposite. Like here, a general contractor assigned its indemnity rights to a party that then went on to lose at trial on the assigned claims. (*Id*. at p. 1046.) The trial court initially entered a judgment of nonsuit against the general contractor, the assignor. But it then granted a motion to correct the judgment to reflect entry of judgment against the assignee instead. (*Ibid*.) We agree with Hearn the case has no bearing because the trial court's modification of the judgment was not at issue on appeal. We held only that the modification was a substantial change resulting in a new final judgment that restarted the appeal period. (*Id*. at pp. 1047–1049.)

15

the attorney fee obligations, unless there is evidence the parties did not intend to transfer those fee obligations.[12] (*Erickson*, at p. 1087; see also *Heppler*, at pp. 1289–1292; Civ. Code, §§ 1589, 3521.) And that is true even if, like here, there is only a partial assignment of contractual rights. (See *Erickson*, at pp. 1086–1087.) Indeed, even outside the attorney fee context, an assignee's voluntary acceptance of the benefits of a contract may obligate the assignee to assume its obligations as a matter of law, even if the assignment agreement expressly *excludes* the obligations, as in the authority Hearn cites. (See *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 790.)[13] Hearn's insurer cannot evade responsibility for paying Second Generation Roofing's costs and legal fees solely because of its tactical choice to keep Hearn's name, not its own, on the case caption. We do not think the discretion afforded a trial court to continue an action in the transferor's name under section 368.5 was meant as a get-out-of-jail-free card, to insulate the real party in interest from exposure to liability for costs and fees when the litigation they pursue concludes unfavorably.

On appeal, Hearn does not seriously address section 368.5. It contends the assignment is invalid, which we address below. It asserts North American "was completely unaware" of the subcontract's terms and so could not assume its obligations; but it cites nothing in the record to support that factual assertion, which is raised improperly for the first time on appeal and also is defied by the prayer for attorney fees in

---

[12] There is no such evidence here. On the contrary, the first amended complaint contains a prayer for attorney fees, which shows Hearn's insurer was indeed " ' primed to take the benefits of an award of attorney fees' " if it won. (See *Erickson*, *supra*, 126 Cal.App.4th at p. 1087, citing *Heppler*, *supra*, 73 Cal.App.4th at p. 1291; see also *California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.*, *supra*, 96 Cal.App.4th at p. 608 & fn. 6.) We express no opinion concerning litigation undertaken pursuant to an assignment for the benefit of creditors, however, which presents considerations unique to that role. (See *Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.* (2007) 153 Cal.App.4th 977, 981–983 [assignee for benefit of creditors not liable for contractual attorney fees under assigned lease].)

[13] Other authority Hearn cites involves quite different facts, and is inapposite. (See *Griffin v. Williamson* (1955) 137 Cal.App.2d 308, 315 [assignment of business assets to newly formed partnership did not render partners liable for pre-existing debt].)

its complaint (see note 12, *ante*). Moreover, the authorities it cites do not involve parties who press suit to enforce assigned contractual rights but then, later, try to escape contractual burdens relating to the conduct of litigation. (See *Recorded Picture Company [Productions] Ltd. v. Nelson Entertainment, Inc.* (1997) 53 Cal.App.4th 350, 363–368; *Unterberger v. Red Bull North America, Inc.* (2008) 162 Cal.App.4th 414, 421; but see, e.g., *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 83–84 [distinguishing *Recorded Picture Co.*].) Apart from that, it asserts—without citing any legal authority (or, again, any portion of the record)—that "even if the assignment was valid, it only assigned a portion of the contract provisions" and so "the application of CCP § 368.5 is not applicable," and "Hearn remained the only party asserting its claims against Second Generation."

We disagree. It was Hearn that first invoked this statute below, in paragraph 18 of its first amended complaint. It alleged "HEARN's insurers are asserting claims in this action in the name of the [*sic*] HEARN assigned to them by HEARN through operation of law." And it alleged they were doing so "[p]ursuant to C.C.P. § 368.5." For Hearn to turn around now and argue the opposite—that "Hearn remained the only party asserting its claims" *and* that section 368.5 does not apply—without so much as even a nod to what it said in its pleadings, is baffling. There are limits to appellate advocacy, chief among them a duty of candor to the court. (Rules Prof. Conduct, rule 5-200.) It may be Hearn has some explanation for its change of tune, but the explanation is not to be found in the 32 pages of briefing Hearn has filed on appeal, nor did it surface in any way at oral argument. Responsible (not to mention, effective) appellate advocacy requires confronting serious potential obstacles, not burying one's head in the sand to them, be they potentially controlling adverse authorities or problematic portions of the record. As has been said by the federal circuit that is home to Chicago's Lincoln Park Zoo: "The ostrich is a noble animal, but not a proper model for an appellate advocate." (*Gonzalez-Servin v. Ford Motor Co.* (7th Cir. 2011) 662 F.3d 931, 934 [Posner, J.].)

Furthermore, Hearn's current position is not the law. It is well-settled that former section 385 applies to partial assignments too. This principle dates back more than a

17

century.  (*Cerf v. Ashley* (1886) 68 Cal. 420, 420 ["It would be too narrow a construction of this section to hold that it applies only where the transfer is of the entire interest"]; accord, *Crescent Canal Co. v. Montgomery*, *supra*, 124 Cal. at p. 145.)  This court addressed partial assignments in a decision of more modern vintage involving similar facts, in *Bank of Orient v. Superior Court* (1977) 67 Cal.App.3d 588.  There, we held that an insurer to whom a cause of action had been partially assigned is an indispensable party who *must* be joined as a party plaintiff.  (*Id*. at pp. 595–596.)  In that context, we observed that former section 385 "has no application to instances where partial assignees or partial subrogees are required to be joined" as indispensable parties (*Bank of Orient*, at p. 596, italics omitted), which we understand to mean the court has no discretion in that situation to *permit* continued suit solely in the original party's name.

On this record, it also appears the partial nature of this assignment is a red herring.  It is true the language of the assignment agreement reserves for Hearn some residual interest in claims for defense cost reimbursement against Second Generation Roofing.  Specifically, Hearn retained the right to seek reimbursement under the subcontracts "to the extent *it* has incurred defense costs or other expenses defending against the subject action, prosecuting its cross-complaint or satisfying or paying insurance policy deductibles or self-insured retentions," while assigning to its insurers its right to seek reimbursement under the subcontracts "to the extent of the defense costs or other expenses *incurred by the INSURERS*" in the case.  (Italics added.)  But it appears from the face of the amended complaint that Hearn *qua* Hearn did not assert any claim based on its retained, unassigned interest.  That is, there is nothing on the face of the first amended complaint indicating that Hearn itself sought reimbursement for litigation expenses it incurred out of its own pocket, as contrasted with the litigation expenses paid by its insurers.  On the contrary, the first amended complaint alleges a complete assignment of rights, which suggests any unassigned rights were not in play ("Hearn assigned its rights under the subcontracts with the cross-defendants . . . to its insurers on August 20, 2009"); it alleged that "*Hearn's insurers* are asserting claims in this action in the name of the [*sic*] Hearn" (italics added); and it alleged that "Hearn did not literally

18

pay its defense costs." That pleading also alleged that Hearn's "co-obligors" (presumably, its insurers) "are providing HEARN with a defense from Plaintiff's claims in this action and are incurring costs for attorneys' fees, experts, and other costs and expenses related to the subject litigation." So, any distinction between partial and complete assignments is immaterial.

These allegations, moreover, substantiate that the real party in interest was Hearn's insurer. A party whose litigation expenses are paid entirely by its insurer has no standing to recover its legal fees against a contractual indemnitor, because the party has suffered no contractual damage. (See *Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 472–473 (*Bramalea*).) However, a party *can* pursue an indemnification action in its own name in that circumstance if, as was done here, it assigns its claim to its insurer. In that case, the insurer is the real party in interest but continued suit in the original party's name is authorized by section 368.5. (See *Bramalea*, at pp. 473–474, citing *Greco v. Oregon Mut. Fire Ins. Co.*, *supra*, 191 Cal.App.2d 674, 687, citing, *inter alia*, former Code Civ. Proc., § 385.) Some of these authorities are in fact the very ones Hearn cited in the first amended complaint.

That Hearn's insurers were actually in the driver's seat, pursuing this lawsuit, is also evidenced by the claims themselves, some of which were self-evidently pursued by Hearn's insurers in their own right, not derivatively as assignees of Hearn. Specifically, the two causes of action for equitable contribution belonged to Hearn's insurers. Such a claim may be asserted by multiple insurers of the same insured and the same risk, each of which "has an independent standing to assert a right for equitable contribution when it has undertaken the defense and/or indemnification of their common insured." (*Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 350.) And, "[t]his right is not the equivalent of 'standing in the shoes' of the insured." (*Ibid.*)

At oral argument, Respondent's counsel effectively conceded that the cross-claims were litigated solely for the benefit of Hearn's insurer after the settlement. Specifically, counsel: (i) confirmed that the settlement resolved all claims against Hearn, and that after the settlement there remained only the issue of the defense costs *Hearn's insurer*

19

had paid on Hearn's behalf, (ii) acknowledged that Hearn's indemnity claims were assigned, (iii) disclosed that the assignment's only purpose was to facilitate North American's recovery of those *insurer-paid* defense costs, by avoiding the holding of *Bramalea*, *supra*, 119 Cal.App.4th 468,[14] (iv) maintained he represents *both* Hearn and its insurer which retained him, under the tripartite relationship that arises between an attorney, insurer and insured when the carrier retains counsel for its insured (see generally *Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089–1096),[15] and (vi) represented that pursuit of the cross-complaint after the assignment was for North American's sole benefit, and that for all practical purposes Hearn was indifferent as to the outcome of Second Generation's motion because it has dissolved and "effectively" has no assets.[16] As to the latter point, too, it seems obvious to us that the undisputed circumstance that Hearn might now be judgment–proof is all the more reason it was inappropriate to deny Second Generation Roofing's motion, leaving it without recourse to the assets of the real party in interest who owned these claims, and controlled this case, after the assignment.

For all of these reasons, then, we reject Hearn's argument that "Hearn remained the only party asserting its claims against Second Generation." By all accounts, and as ultimately conceded by counsel, Hearn *qua* Hearn was out of this case following the

---

[14] Under *Bramalea*, a contractual indemnitee whose defense was entirely funded by insurance and paid nothing itself out-of-pocket may not recover its defense costs as contractual indemnity damages. (*Bramalea*, *supra*, 119 Cal.App.4th at pp. 472–473.)

[15] According to one leading commentator, "[T]he attorney's duty to the insurance company is subordinate to that owed to the insured" in this situation, which "often puts defense counsel in a difficult situation. As one court has noted, '… in reality, the insurer's attorneys may have closer ties with the insurer and more compelling interest in protecting the insurer's position, *whether or not it coincides* with what is best for the insured.' " (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2016) ¶¶ 7:846–7:847, pp. 7B-138–7B-139, citing *Purdy v. Pac. Auto. Ins. Co.* (1984) 157 Cal.App.3d 59, 76.)

[16] Hearn's counsel also contends this circumstance avoids a conflict of interest in the representation, and although we have concerns, that is an issue we do not decide.

20

assignment. The court abused its discretion in declining to amend the orders awarding attorney fees and costs to add North American's name as a judgment debtor.[17]

## III.

### *The Trial Court's Grounds for Denying the Motion*

#### A.     **Insurance Code Section 11580**

As noted, the trial court articulated several reasons for denying Second Generation Roofing's motion, one of which was that Second Generation Roofing's sole remedy was to bring an action under Insurance Code section 11580. However, that statute does not provide any remedy on this record, much less an exclusive one.

In appropriate cases, Insurance Code section 11580 enables a judgment creditor to bring a direct action against the judgment debtor's insurer to satisfy the judgment out of

---

[17] The question of personal jurisdiction was not raised below nor addressed by the trial court. However, on appeal Second Generation Roofing contends the trial court has personal jurisdiction over North American, by virtue of its acceptance and prosecution of the rights assigned to it. We agree. A plaintiff consents to the court's exercise of jurisdiction by the very act of asserting its claims. (See 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 161, p. 764 ["the plaintiff, by bringing the action, submits himself or herself to the jurisdiction of the court with respect to the cause of action"].) Here, the first amended complaint alleges, and a sworn declaration of counsel states, that Hearn's insurers were suing (under Hearn's name). No formal substitution was necessary for jurisdiction to attach against them. (See *California Concrete Co. v. Beverly Hills Savings & Loan Assn.* (1989) 215 Cal.App.3d 260, 267–268.) Furthermore, there is no evidence Hearn's counsel lacked authority to appear on North American's behalf in pursuit of the assigned claims (see *Milrot v. Stamper Medical Corp.* (1996) 44 Cal.App.4th 182, 186 (*Milrot*)), and even had Hearn's counsel not indicated during oral argument that he also represents Hearn's insurer, we could presume Hearn's counsel did have authority. "In the event of a transfer of interest in a pending action, the attorney for the nominal party/assignor does not automatically cease to be the attorney of record." (*Casey v. Overhead Door Corp.* (1999) 74 Cal.App.4th 112, 121, disapproved on another ground in *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 484; see, e.g., *Tuffree*, *supra*, 124 Cal. at pp. 309–310.) And " 'it is always presumed, until the contrary appears, that an attorney is duly authorized to appear for and represent any parties for whom he assumes to act.' " (*Pacific Paving Co. v. Vizelich* (1903) 141 Cal. 4, 8–9; see also *Turner v. Caruthers* (1861) 17 Cal. 431, 433.)

policy proceeds.[18]  One key requirement, however, is that the insurance policy covers the relief awarded in the judgment.  (*Miller v. Am. Home Assurance Co.* (1996) 47 Cal.App.4th 844, 847–848.)  In this case, Hearn did not introduce any evidence its insurance policy would cover the award of prevailing party attorney fees and costs made to Second Generation Roofing.  The policy itself is not in the record, and the only evidence Hearn did introduce *disclaimed* coverage.[19]  On appeal, Hearn adverts to that evidence in its brief and expressly disavows coverage again.  It tells this court, North American "has no obligation to satisfy judgments imposed upon its insured Hearn."  Furthermore, as Second Generation Roofing points out, an award of costs or attorney fees is typically not recoverable by a third-party judgment creditor in a direct action against the insurer.  (See *San Diego Housing Com. v. Industrial Indemnity Co.* (2002) 95 Cal.App.4th 669, 691–693; accord, *Clark v. California Ins. Guarantee Assn.* (2011) 200 Cal.App.4th 391.)  So, for these reasons, the trial court had no basis to conclude there was a potential remedy under Insurance Code section 11580.

But even if there were a remedy, we also agree with Second Generation Roofing the statute is irrelevant, and in no way displaces a litigant's right to amend a post-judgment order to add the name of a judgment debtor who was the true party to the action, even when that party is an insurer.  Insurance Code section 11580 authorizes a direct action "against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."  (Ins. Code, § 11580, subd. (b)(2).)  Second Generation Roofing was not seeking to "recover on" a judgment (out of insurance

---

[18]  The statute reads into every policy of liability insurance issued in California a direct action provision, stating that "whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."  (Ins. Code, §11580, subd. (b)(2).)

[19]  That was the declaration of Hearn's counsel, which described North American's agreement to defend Hearn under a reservation of rights as being "closely circumscribed by the terms of [its] insuring agreement" and "not extend[ing] to a duty to indemnify Hearn."

22

proceeds, or any other specific fund) but to *amend* a judgment, to reflect the true name of a judgment debtor directly liable in its own name for the amounts awarded by that judgment. Nor was it trying to recover "on the policy." The relief it sought was premised on North American's assignment and exercise of rights from Hearn, not North American's status as Hearn's insurer. We agree that if Second Generation Roofing wished to proceed against policy benefits to satisfy these post-judgment orders, it must assert a claim against Hearn's insurers under Insurance Code section 11580, but that's not what it was trying to do.

The trial court's conclusion that Second Generation Roofing's "only avenue for relief" was to pursue a direct action under Insurance Code section 11580 has no support in either the text of the statute itself, or principles of statutory interpretation. As noted, that provision states that "an action may be brought against the insurer on the policy" by a judgment creditor in specified circumstances. (Ins. Code, § 11580, subd. (b)(2).) The trial court apparently construed this language to mean that recovery by an insured's judgment creditor may be had against an insurer "only" by means of a direct action on the policy. But we cannot insert that limitation under the guise of interpreting section 11580. (See *County of Santa Clara v. Escobar* (2016) 244 Cal.App.4th 555, 570–571.) "It is of course a 'cardinal rule' of statutory construction that a law ' "is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions." ' " (*Id.* at p. 571; see also Code Civ. Proc., § 1858 [in construing statutes, court may not "insert what has been omitted"].) The text of this statute contains no ambiguity, and so " 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' " (*People v. Allegheny Cas. Co.* (2007) 41 Cal.4th 704, 709.) Nothing in the text of section 11580 "declare[s] in definite language" that a direct action against an insurer on the policy is a judgment creditor's sole remedy (see *County of Santa Clara*, at p. 571), and we decline to adopt that construction.

Furthermore, nothing on the face of Insurance Code section 11580 exempts insurers from the operation of section 368.5 of the Code of Civil Procedure. There is

23

simply no conflict between the text of these two statutes. The authorities Hearn cites do not address this question. (See *Webster v. Superior Court* (1988) 46 Cal.3d 338, 346–348 [construing statutory stay governing insurance liquidation proceedings ]; *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd*. (9th Cir. 1986) 784 F.2d 1392, 1403–1406 [section 11580 held applicable to policy indemnifying loss from liability for personal injury, and constitutional as applied to out-of-state contract].)

At oral argument, Hearn acknowledged there is nothing in the statute's text that explicitly provides it is an exclusive remedy, but nonetheless argued for that construction because, in its view, subdivision (b) of section 11580 otherwise would be rendered "completely unnecessary." We disagree. The argument is circular. Subdivision (b) *is* the direct action remedy. (See Ins. Code, § 11580, subd. (b)(2).) All policies of insurance covered by the statute, whether they contain the direct action language required by subdivision (b)(2), "shall be construed as if such provisions were embodied therein." (See *id.* §11580, first paragraph.) Hearn's argument boils down to the illogical contention that the mere existence of the remedy makes it an exclusive one.

Hearn cites no authority holding that Insurance Code section 11580 is a judgment creditor's sole remedy against an adversary's insurer, and we are aware of none. On the contrary, judgment creditors may sometimes pursue *damages claims* against the judgment debtor's insurer. One California court has held they may do so in their own right, and seek tort damages as a third-party beneficiary of the policy, if there is a final judgment rendered against the insured that is covered by the policy and the insurer refuses in bad faith to pay it. (*Hand v. Farmers Ins. Exchange* (1994) 23 Cal.App.4th 1847 (*Hand*); *accord*, *Low v. Golden Eagle Ins. Co.* (2002) 101 Cal.App.4th 1354, 1368; *Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 433; *Harper v. Wausau Ins. Corp.* (1997) 56 Cal.App.4th 1079, 1086.)[20] And it is well-settled judgment creditors

---

[20] Some authorities have questioned this in dictum. (See *San Diego Housing Com. v. Industrial Indemnity Co.* (2002) 95 Cal.App.4th 669, 687–688; *Hughes v. Mid-Century Ins. Co.* (1995) 38 Cal.App.4th 1176, 1184; cf. *CalFarm Ins. Co. v. Krusiewicz* (2005) 131 Cal.App.4th 273, 276–277 [assuming but not deciding *Hand* was correctly

may bring suit under an assignment of rights from the insured in some instances too. For example, subject to some limitations, a judgment creditor may bring suit on an assigned claim the insurer wrongfully failed to settle within policy limits, in which case the measure of damages is the entire amount of the judgment even if it exceeds policy limits.[21] (See *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 661–662; *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 236–243.) A judgment creditor also may take an assignment of the insured's claim that the insurer wrongfully refused to defend it. (See *Risely v. Interinsurance Exchange of Automobile Club* (2010) 183 Cal.App.4th 196, 208, 213–214 (*Risely*).) And sometimes attorney fees on assigned claims are recoverable too, if sought by judgment creditors as tort damages under *Brandt v. Superior Court* (1985) 37 Cal.3d 813. (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1255.)

These cases also reflect that it is not uncommon for judgment creditors to assert, in a single lawsuit against an insurer, both damages claims assigned to them by the insured as well as a direct claim on the judgment under Insurance Code section 11580. (See, e.g., *Risely*, *supra*, 183 Cal.App.4th at pp. 201–203; *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 458, fn. 7, 467–468.) The latter claim will not be viable if policy limits have been exhausted. (*Archdale*, at pp. 458, fn. 7, 480, fn. 28.) But policy limitations that would otherwise apply in a direct action brought under Insurance Code section 11580 do not apply to an assigned bad faith claim. (See *Camelot by the Bay Condominium Owners' Assn. v. Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33, 43 & fn.4.) In most of these situations, what is really going on is the judgment creditor is attempting to satisfy all or part of its judgment through a claim for

---

decided]; see also *Maxwell v. Fire Ins. Exchange* (1998) 60 Cal.App.4th 1446, 1452 [declining without analysis to follow *Hand* to the extent it would permit recovery of emotional distress damages for 81-day delay in paying judgment creditor in full].)

[21] Such a claim may not be predicated upon a stipulated judgment (see *Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718; *21st Century Ins. Co. v. Superior Court* (2015) 240 Cal.App.4th 322, 327), nor an award of punitive damages. (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 313.)

contract and/or tort damages against the insurer, rather than through (or, in addition to) a direct action on the judgment. Yet this entire body of law would be meaningless if the direct action provision of Insurance Code section 11580 constituted a judgment creditor's sole avenue for relief against an insurer.[22]

Two published California opinions have rejected arguments the statute displaces other rights or remedies against insurers, and their reasoning applies equally here. In *Turner v. Evers* (1973) 31 Cal.App.3d Supp. 11, disapproved on other grounds in *Javorek v. Superior Court* (1976) 17 Cal.3d 629, 641, the appellate department of superior court held Insurance Code section 11580 does not override the remedy of garnishment, embodied by former section 544 of the Code of Civil Procedure. (See *Turner*, at pp. 22–24.) Among other reasons, "[t]here is nothing in section 11580, subdivision (b) to indicate that it was intended to exempt insurers from garnishment and thus given them a benefit that other obligors of the insured do not enjoy." (*Id*. at p. 23; see also *id*. at p. 24 ["Since section 11580, subdivision (b) does not refer to garnishments, we should not expand it to nullify the application of section 544 to insurers"].) And in *Roberts v. Home Insurance Indemnity Co.* (1975) 48 Cal.App.3d 313 (*Roberts*), our colleagues in Division Four held the statute was no bar to a personal injury plaintiff's action against an insurer under Louisiana's direct action statute, which permits an injured plaintiff to sue the tortfeasor's insurer directly on the policy without awaiting a final judgment against the insured. (*Id*. at pp. 317–318.) Citing *Turner*, the court reasoned in part, "The statute is silent as to a direct action against the insurer before judgment is obtained against the insured. [Citation.] That silence does not imply a legislative policy against allowing a

---

[22] We offer these examples merely for illustration, and by no means suggest an insurer's liability to a judgment creditor is open-ended. An insurer cannot be held liable in damages to a judgment creditor for allegedly pursuing a meritless appeal of a judgment against its insured, for example, because the appropriate remedy in that instance lies in the pursuit of appellate sanctions. (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782.) Similarly, an insurer that appeals an adverse judgment rendered against *it,* and posts a bond to stay its execution, cannot be held liable in tort to the judgment creditor for refusing to pay the judgment. (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766.)

claimant to pursue any rights which may have been created by contract or by another state's direct action statute." (*Ibid.*) We have described *Roberts* as "an exception to the rule [that] . . . 'generally speaking the injured party may not directly sue an insurer of the alleged tortfeasor.' " (*Hoteles Camino Real, S.A. v. Superior Court* (1977) 70 Cal.App.3d 367, 373.)

The Ninth Circuit parted ways with *Turner* and *Roberts* in *Fireman's Fund Ins. Co. v. City of Lodi, California* (9th Cir. 2002) 302 F.3d 928, which held section 11580 conflicts with, and therefore preempted, a local law that would permit a direct action on an insurance policy before entry of a final judgment. (See *Fireman's Fund Ins.*, 302 F.3d at pp. 955–956.) The Ninth Circuit acknowledged both decisions "support the conclusion that § 11580 does *not* set forth the exclusive set of circumstances under which one may initiate a direct action against an insurer." (*Id.* at p. 955.) But it reasoned, "there is greater authority to suggest that § 11580 sets forth the exclusive set of circumstances under which a third-party claimant may directly sue another policyholder's liability insurer." (*Ibid.*) That observation, however, is not supported by the cited authorities, none of which addresses whether Insurance Code section 11580 displaces other rights or remedies.[23] We therefore part ways with *Fireman's Fund* to the extent its broad language

---

[23] *McKee v. National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282 holds that a "judgment" made enforceable by Insurance Code section 11580 must be final, in the sense that any appeal from it has been exhausted or the appeal deadline has passed. (*McKee*, at pp. 285–287).

*Nationwide Ins. Co. v. Superior Court* (1982) 128 Cal.App.3d 711 addressed the elements of a (now-abrogated) third-party cause of action against an insurer for bad faith settlement practices under *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880, overruled in *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, similarly holding the claim does not exist until a final judgment against the insured is entered, from which appeals have been exhausted. (*Nationwide Ins. Co.*, at pp. 713–715.)

*Zahn v. Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, a pre-*Royal Globe* decision, declined to recognize a cause of action by injured third parties for an insurer's bad faith refusal to settle a case before any judgment against the insured had been entered. It reasoned not that such a claim is barred by section 11580 but, on the contrary, that the injured party was not a third-party beneficiary of the insurance policy unless and

is inconsistent with our decision. We find the reasoning of *Turner* and *Roberts* persuasive, insofar as their textual analysis of the statute is concerned, and equally pertinent to the application of section 368.5. Indeed, this case presents even less reason to infer a potential conflict with Insurance Code section 11580, because Second Generation Roofing is not seeking to secure any policy benefits.

Accordingly, we hold that Insurance Code section 11580 does not bar a judgment creditor's motion under section 368.5 to amend a judgment to add an insurer as a judgment debtor on the ground that the insurer is the real party in interest by virtue of its having taken an assignment of the rights and claims at issue in the case and litigated the case to final judgment.

## B. Subrogation

In denying the motion, the trial court also commented that "the assignment does not extend any rights to Hearn's insurers which they did not already possess under the operation of law."

Second Generation Roofing suggests the court possibly had in mind here principles of insurance subrogation, and argues at some length that, if so, the point is irrelevant. It contends that "regardless of what [North American] supposedly could have done, what it actually did was to take an assignment of rights from Hearn and prosecute the rights assigned to it against [Second Generation Roofing] in 'Hearn's' name."

until there was a judgment against the insured, as reflected by the direct action statute itself. (See *Zahn*, at p. 513.)

*Tashire v. State Farm Fire & Casualty Co.* (9th Cir. 1966) 363 F.2d 7, revd. (1967) 386 U.S. 523, involved a question of federal subject matter jurisdiction in an insurer's interpleader action against several California tort plaintiffs and others that turned on an interpretation of the federal interpleader statute (28 U.S.C. § 1335). Neither the Ninth Circuit's opinion nor the Supreme Court's addresses whether section 11580 would provide the injured parties who were named in the federal case an exclusive remedy against the insurer.

And, *Laguna Pub. Co. v. Employers Reinsurance Corp.* (C.D. Cal. 1985) 617 F.Supp. 271 held that a judgment creditor lacks standing to sue under section 11580 where the judgment had been set aside, and also cannot sue the insurer under *Royal Globe* in that circumstance because there is not yet a final judgment. (*Id.* at pp. 272–273.)

28

We agree. As previously explained, the transfer of Hearn's interests in the subcontracts made North American the real party in interest in this suit, and the existence of another potential remedy under subrogation principles is irrelevant to the application of section 368.5. Second Generation Roofing also points out, correctly, that an insurer who pursues a subrogation claim steps into the shoes of its insured and, if unsuccessful, assumes the insured's liability for contractual attorney fees to the prevailing party. (See *Employers Mutual Liability Ins. Co v. Tutor-Saliba Corp.* (1998) 17 Cal.4th 632, 639–642; *Allstate Ins. Co. v. Loo* (1996) 46 Cal.App.4th 1794, 1799–1801.) So it would make little sense to refrain from making North American expressly liable for the attorney fees and costs awarded here based on the possibility North American might have pursued recovery against Second Generation Roofing on a subrogation theory.

### C.     The Trial Court Did Not Lack Jurisdiction to Amend the Order.

The trial court also denied the motion on the ground that Hearn's notice of appeal from the June 12, 2013 attorney fees order divested the court of jurisdiction to amend the order to add North American as a judgment debtor. However, the earlier, April 4, 2013 award of costs was not appealed and so, at a minimum, the court could not have been divested of jurisdiction over it.

Nor was the court divested of jurisdiction to amend the June 12, 2013 order. Hearn's appeal from that order was untimely and we have dismissed it. The automatic stay, when it applies, arises upon a "duly perfected" appeal. (See *Sacks v. Superior Court* (1948) 31 Cal.2d 537, 540; see also § 916.) Since Hearn's appeal was invalid, it did not affect the trial court's jurisdiction to proceed. (See *Central Sav. Bank v. Lake* (1927) 201 Cal. 438, 442 [appeal from non-appealable order]; *Ex parte Kandarian* (1921) 187 Cal. 479, 480 [untimely appeal] *Pazderka v. Caballeros Dimas Alang, Inc.* (1999) 62 Cal.App.4th 658, 666; *Davis v. Taliaferro* (1963) 218 Cal.App.2d 120, 124.)

29

## IV.

### *Hearn's New Contentions on Appeal*

Finally, we come to a number of new arguments Hearn has made on appeal in defense of the trial court's ruling.

#### A.  Ripeness

First, Hearn argues the issue of amending these orders is not ripe because it has appealed the order awarding fees and costs.  But the error of Hearn's contention is evident from the very authority it cites, *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158.  As the Supreme Court explained in that case, the ripeness requirement "prevent[s] judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes." (*Id.* at p. 170.)  It "is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion." (*Ibid.*)  While we agree with Hearn that "It would be a waste of judicial resources to consider altering a judgment to add a debtor if the Court may dispose of the judgment entirely through Hearn's appeal" seeking to reverse the judgment, that potential for mootness in no way renders these issues unripe. There is a present and existing, concrete dispute as to whether Hearn's insurer should be added to these post-judgment orders.  Furthermore, as noted, we have now dismissed the other appeal as untimely, and so there is no longer even any potential that this appeal could become moot.

#### B.  Unreasonable Delay

Reversing course from its position that it is premature for this court to address these issues, Hearn also argues Second Generation Roofing has waited too long to raise them.  Hearn contends Second Generation Roofing unreasonably delayed more than four years after it knew of the assignment, and so the judgment should be affirmed under this court's decision in *Alexander v. Abbey of Chimes* (1980) 104 Cal.App.3d 39 (*Alexander*). We held in *Alexander* that a motion to amend a judgment to add a new judgment debtor under section 187 must be timely made, and that waiting seven years to do so after the

judgment became final, without explanation, was unreasonable. (*Alexander*, at pp. 47–49.)

Alexander does not compel reversal. Because Hearn did not raise its delay theory below, it has been forfeited. (See *LaChance v. Valverde* (2012) 207 Cal.App.4th 779, 789.) We also would reject the argument had it been preserved, because *Alexander* does not apply and it also is distinguishable.[24] It arose under section 187, not section 368.5. A motion for substitution under former section 385 may be granted after judgment has been entered, and even after an appeal has been taken. (*Erickson v. Boothe*, *supra*, 90 Cal.App.2d 457, 459.) Furthermore, the moving party in *Alexander* waited seven years to file its motion under section 187 after the judgment became final (*Alexander*, *supra*, 104 Cal.App.3d at p. 48); Second Generation Roofing moved far more quickly. It filed its motion to amend the two orders awarding attorney fees and costs only seven months after entry of the first order, and just five months after entry of the second order which is the ruling that determined the amount of attorney fees. This was reasonable. (See *In re Levander* (9th Cir. 1999) 180 F.3d 1114, 1121, fn.10.)

## C. Hearn's Belated Attacks on the Validity of the Assignment

For the first time on appeal, Hearn also contends in scattershot fashion the "purported" assignment was invalid on a number of grounds. The position borders on frivolous, and also rests in large part on repeated violations of the rules of appellate briefing.

Hearn never challenged the validity of the assignment below; it merely urged the trial court to turn a blind eye to evidence of the assignment agreement when confronted with the Stankowski Declaration. So this theory has been waived. (*LaChance v. Valverde*, *supra*, 207 Cal.App.4th at p. 789.)

---

[24] We have no occasion to decide whether to revisit *Alexander* in light of recent criticism that it dispensed with a required element of prejudice. (See *Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 285–286.)

31

It also is untenable. Hearn's position on appeal contradicts: (1) binding judicial admissions in the first amended complaint that "HEARN assigned its rights under the subcontracts with the cross-defendants, including . . . [Second Generation Roofing], to its insurers on August 20, 2009" and, moreover, that "HEARN's insurers are asserting claims in this action in the name of the [*sic*] HEARN assigned to them by HEARN through operation of law"; (2) the declaration of its board member, Gordon Stankowski, who swore under oath that "[i]n my capacity as Board Member of HEARN, I have personal knowledge of the Assignment Agreement dated August 18, 2009, which I entered into on behalf of HEARN," and who also authenticated the assignment agreement as an agreement "I entered into on behalf of HEARN to assign the rights and interests of the subcontracts . . . to North American Specialty Insurance Company and RSUI Group, Inc."; (3) factual statements contained in the memorandum of points and authorities Hearn filed below, which we have already described, acknowledging that "Hearn assigned some of its contractual rights to its insurers so they might pursue the subcontractors separately to recover their defense costs"; (4) the trial court's *verbatim* factual finding; and, perhaps most egregiously, (5) the sworn declaration by the very lawyer who signed Hearn's appellate brief, who declared under oath below that "Hearn's defending insurers are suing in Hearn's name as transferees of Hearn's contractual indemnity rights . . . ." Hearn's contention that the assignment is invalid, on any ground at all, is disingenuous.

Again, if there was anything inaccurate about these positions Hearn took in both its pleadings and in sworn statements of counsel, it perhaps might have proffered evidence in opposition to Second Generation Roofing's motion below to try to explain. But its attacks on the assignment's validity at this late stage are based on nothing. No evidence whatsoever.

Hearn also is wrong on the law. It argues that, at a minimum, the prevailing party attorney fee provision of the subcontract could not be validly assigned, because Second Generation Roofing didn't execute the assignment agreement. In support, it cites Civil Code section 1457, which states in relevant part: "The burden of an obligation may be

32

transferred with the consent of the party entitled to its benefit, but not otherwise . . . ."
Hearn misconstrues Section 1457. The provision "is only intended to protect *the party to be benefited* from the effects of the assignment of an obligation." (*Cutting Packing Co. v. Packers' Exchange of California* (1890) 86 Cal. 574, 576, italics added.) It does not mean that without the other party's consent an assignee cannot assume contractual obligations, but simply that the assignor is not at the same time relieved of them. (*Wiseman v. Sklar* (1930) 104 Cal.App. 369, 374.) An assignor remains bound under the contract absent the counter-party's consent to the assignment, but stands "in the nature of a surety for the [assignee] for the performance of the obligation." (*Cutting Packing Co.*, at p. 577.) Hearn cites no authority holding the lack of a counter-party's signature is fatal to an assignment. " '[I]n the absence of [a] statute or a contract provision to the contrary, *there are no prescribed formalities that must be observed to make an effective assignment*. It is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee.' " (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1002, italics added; see, e.g., *Walmsley v. Holcomb* (1943) 61 Cal.App.2d 578, 583–584 [upholding assignment executed only by assignors].) Even oral assignments may be valid. (See Civ. Code, § 1052.) Here, as previously explained, Hearn's insurers are bound by their voluntary acceptance of the subcontract's benefits. (*Id.* § 1589.)

Hearn raises several other objections to the assignment, but none presented as any cognizable legal argument. It asserts, with no discussion, "there is no evidence that Mr. Stankowski was authorized to bind Hearn to contracts." It also contends, with no citation to legal authority or to the record, that "neither of the purported assignees ever received a copy of the assignment, nor did they ever assent to the assignment by executing or even orally agreeing to the assignment. As such, the purported assignment is invalid . . . ." We disregard these points. They were not raised below (see *Bardis v. Oates* (2004) 119 Cal.App.4th 1, 13–14, fn. 6); they are not supported by any citation to the record (see *Dominguez v. Financial Indem. Co.* (2010) 183 Cal.App.4th 388, 392, fn. 2; Cal. Rules of Court, rule 8.204(a)(1)(C)); they appear to be based upon matters outside the record (see

33

*Citizens Opposing a Dangerous Environment v. County of Kern* (2014) 228 Cal.App.4th 360, 366, fn. 8); and with minor exception, they are not supported by any cogent argument or legal authority[25] (see, e.g., *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817; *Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956).

In sum, we reject Hearn's belated attempts to challenge the assignment.

## V.

### *Remedy*

Having determined that North American cannot evade responsibility for being named as a judgment debtor, liable under the orders awarding fees and costs to Second Generating Roofing, there remains the question of the appropriate remedy.

Second Generation Roofing argues that "[t]he real 'Hearn' " also should remain liable for the attorney fees and costs awarded, "because it made only a partial assignment of its contract to its insurers." Second Generation Roofing also invokes the principle that, "[e]ven if the assignee *assumes* the obligation, i.e., agrees to perform it, the assignor still remains secondarily liable as a surety or guarantor, unless the promisee releases him or her or the parties execute a complete novation." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 730, p. 815.)

This issue does not appear to be in dispute. Hearn's appellate brief does not address, and thus takes no issue with, Second Generation Roofing's position. On the contrary, Hearn contends "there is no basis to impose the liabilities of Hearn's subcontract upon [North American]." Since neither party has suggested substitution, and the parties evidently agree Hearn should remain liable on the awards of litigation expenses, we will reverse with appropriate directions to join North American as an additional judgment debtor rather than substitute North American in lieu of Hearn.

---

**25** Hearn cites, but does not discuss, *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284 which held there was a failure to prove the existence of a valid assignment in the absence of evidence the alleged agent who executed the assignment was authorized to do so. (*Id*. at pp. 292–293.) Unlike here, however, the assignment's validity was not questioned for the first time on appeal, nor was it judicially admitted by the very party seeking to defeat it.

**DISPOSITION**

The February 27, 2014 order denying Second Generation Roofing's motion to amend the April 14, 2013 order and June 12, 2013 order is reversed.  On remand, the trial court is directed to amend both orders to add the name of North American Specialty Insurance Company as owing the amounts awarded against "Hearn."

_____
STEWART, J.


We concur.


_____
KLINE, P.J.


_____
MILLER, J.

Trial Court:   Sonoma County Superior Court

Trial Judge:   Hon. Elliot Lee Daum

Counsel:

Wild Carey & Fife, Donald R. Wild, Terence Kenney; Archer Norris, William Staples for Defendant and Appellant.

Boornazian, Jensen & Garthe, Robert B. Lueck, Jeffery A. Chadic, and Anthony F. Manzo for Plaintiff and Respondent.